**U–HAUL INTERNATIONAL, INC., an Oregon Corp., Plaintiff-Appellee,**

v.

**JARTRAN, INC., a Florida Corporation, and James A. Ryder, Defendants-Appellants.**

No. 84–2801.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 1986.

Decided July 3, 1986.

William S. Hawgood, II, Streich, Lang, Weeks & Carson, Phoenix, Ariz., for plaintiff-appellee.

Kenneth R. Heitz, Irell & Manella, Los Angeles, Cal., for defendants-appellants.

Before MERRILL, SNEED, and KOZINSKI, Circuit Judges.

SNEED, Circuit Judge:

U-Haul International, Inc. (U-Haul) sued Jartran, Inc. (Jartran) for false comparative advertising under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and under the common law. The district court awarded U-Haul $40 million and attorney fees, as well as a permanent injunction against certain Jartran advertisements. *U-Haul International, Inc. v. Jartran, Inc.,*

601 F.Supp. 1140 (D.Ariz.1984). Jartran appeals on several grounds. To facilitate our discussion of the issues raised by Jartran's appeal, our opinion is organized in the following manner. In Part I of this opinion, we briefly discuss the factual background of the case. In Part II, we modify the district court's resolution of the real-party-in-interest issue, requiring the district court, in effect, to supervise distribution of U-Haul's recovery to the various entities associated with U-Haul (the U-Haul System). In Part III, we affirm the district court's finding of liability. In Part IV, we affirm the district court's calculation of damages.[1] In Part V, we hold that the injunction is unconstitutionally overbroad. In Part VI, we reverse the district court's holding under Florida law that James A. Ryder is the alter ego of Jartran. Finally, in Part VII, we refuse to award attorney fees to U-Haul on this appeal. Thus, as this organization reveals, we affirm in part, modify in part, reverse in part, and remand to the district court for further proceedings.

## I.

### FACTS

The U-Haul System has dominated the self-move consumer rental industry for many years. In mid-1979, Jartran entered that market on a national basis. It engaged in a nationwide newspaper advertising campaign comparing itself to U-Haul. The campaign lasted from the summer of 1979 to December of 1980 and included advertisements in forty-one states and the District of Columbia. While Jartran's revenues increased from $7 million in 1979 to $80 million in 1980, revenues of the U-Haul System declined for the first time in its history, from $395 to $378 million. The tremendous success of the advertisements is demonstrated not only by the financial growth of Jartran, but also by Jartran's

receipt of the prestigious "Gold Effie" award, which the American Marketing Association awards annually in recognition of effective advertising campaigns.

The relations between U-Haul and the other entities that use the U-Haul trademark and make up what we designate as the U-Haul System are important to the understanding of the issues raised by this appeal. The plaintiff in this action, U-Haul International, Inc., owns the U-Haul trademark and operates both as a clearinghouse for distribution of U-Haul trucks and trailers and as a provider of accounting services to various entities. It does not, however, own the trucks and trailers. Most of these are rented to U-Haul by a variety of entities and individuals (the Fleet Owners). U-Haul's corporate parent is AMERCO, a holding company, which owns 100% of both U-Haul International, Inc. and the 97 U-Haul Rental Companies, each of the latter of which has an exclusive geographic region of service. The final members of the U-Haul system are the 6700 U-Haul Rental Dealers, local businessmen who have contracts with the geographically appropriate U-Haul Rental Company.

Each of these various parties receives a share of the revenue from any transaction in which it (or its equipment) is involved. The flow and allocation of revenue within the system is as follows. The Rental Dealers remit the proceeds to U-Haul, which allocates shares to the appropriate entities. Each Fleet Owner receives 35% of the gross rental income from its equipment. The share of the Rental Companies varies from 20–35%, depending on the type of transaction and the details of their individual contracts with U-Haul. Rental Dealers also receive a share between 20 and 35% of the gross rental income. Finally, U-Haul itself apparently receives 5–10% of the proceeds.

---

1. In Parts III and IV of this opinion, we affirm the district court's conclusions on the liability and damage issues under the Lanham Act. We therefore need not address Jartran's contention that it was improper for the district court to

apply Arizona law—the state law applicable to U-Haul's own claims—to the state-law claims for damages suffered by members of the U-Haul System that are not associated with Arizona.

This litigation commenced on June 16, 1980, when U-Haul filed suit seeking damages and an injunction against further advertisement. The district court granted a preliminary injunction on February 17, 1981. On July 21, 1982, we affirmed the injunction, rejecting Jartran's claim that the Lanham Act does not apply to false advertising except in the context of "palming off." *U-Haul International, Inc. v. Jartran, Inc.*, 681 F.2d 1159, 1162 (9th Cir.1982) [ *U-Haul I* ]. On remand, in the spring of 1983, the district court tried the full case and found in favor of U-Haul under both the Lanham Act and the common law.

The district judge calculated damages with respect to each claim under two distinct methods. The first method relied on revenue projections for the U-Haul System as a whole. Those projections indicated that the U-Haul System experienced a substantial revenue shortfall because of the Jartran advertisements. Relying on this evidence, the district court awarded $20 million in actual damages. The second theory relied on the cost of the advertising campaign to Jartran, $6 million, and the cost of corrective advertising by the U-Haul System, $13.6 million. This also produced an award of $20 million. On the Lanham Act count, the district court doubled the $20 million under section 35 of the Lanham Act; on the common-law count, it awarded $20 million in punitive damages. Thus, the district court reached a $40 million verdict with respect to each claim. Only one recovery of full compensation is permissible, however. Because we affirm the calculation of the award based on advertising expenditures and the doubling of the award under section 35 of the Lanham Act, we need not address Jartran's challenges to the revenue shortfall calculation or to the award of punitive damages.

## II.

### REAL PARTY IN INTEREST

Jartran, troubled by the U-Haul System's structure, contends that U-Haul is not a real-party-in-interest for purposes of Fed.R.Civ.P. 17(a). In substance, it argues that U-Haul cannot recover damages for the thousands of other members of the U-Haul System that are not parties to this action. In response, U-Haul argues that this position has been waived by Jartran. We address this argument initially.

On January 26, 1981, the district court denied Jartran's motion to dismiss on this ground. U-Haul contends that Jartran should have challenged the district court's denial on its subsequent appeal from the preliminary injunction. U-Haul relies on law-of-the-case precedents, *e.g., Munoz v. County of Imperial*, 667 F.2d 811, 817 (9th Cir.), *cert. denied*, 459 U.S. 825, 103 S.Ct. 58, 74 L.Ed.2d 62 (1982); *Alioto v. Cowles Communications, Inc.*, 623 F.2d 616, 618–19 (9th Cir.1980), *cert. denied*, 449 U.S. 1102, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981).

We reject this claim. Jartran probably could not have raised the real-party-in-interest issue on the last appeal, which dealt with the propriety of the district court's injunction against false advertising. Jurisdiction over that appeal rested on 28 U.S.C. § 1292(a)(1) (allowing immediate appeals from orders granting or refusing to grant injunctions). In ordinary circumstances, an appeal from the district court's denial of the motion to dismiss would clearly have been barred. *See id.* § 1291 (allowing appeals from final orders; implicitly barring jurisdiction over interlocutory orders not described in § 1292); *Catlin v. United States*, 324 U.S. 229, 236, 65 S.Ct. 631, 635, 89 L.Ed.2d 911 (1945). U-Haul seems to believe that Jartran's right to appeal the injunction under section 1292(a)(1) also gave the *U-Haul I* panel jurisdiction over the interlocutory denial of the motion to dismiss. To so hold would be unwise. As one commentator notes, "[O]n an appeal under Section 1292 the appellate court will be reluctant to delve any further into the merits than is necessary to resolve the particular questions made appealable by the statute." 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2658.1, at 78 (2d ed. 1983) [hereinafter cited by authors' names only]; *see Nelms*

*v. United Association of Journeymen,* 405 F.2d 715, 719 (5th Cir.1968); *Alloyd General Corp. v. Building Leasing Corp.,* 361 F.2d 359, 363 (1st Cir.1966); 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 110.25[1], at 269–70 (2d ed. 1985) [hereinafter cited as *Moore's Federal Practice* ].

In this case, the appellate court would have had no reason to consider the real-party-in-interest issue on the earlier appeal. U-Haul was the appropriate party in that appeal, which considered only the merits of the injunction. Lanham Act § 43(a), 15 U.S.C. § 1125(a), grants a cause of action to "any person who believes that he is or is likely to be damaged by the use of any such false description or representation." As the owner of the trademark, it was appropriate for U-Haul to seek under Lanham Act § 43(a) to enjoin advertising that harmed U-Haul's trademark. The *U-Haul I* panel addressed only the propriety of the preliminary injunction. It would be senseless to penalize Jartran for not raising an issue that the *U-Haul I* panel would not have decided. We refuse to do so and turn to the merits of Jartran's claim.

The merits of Jartran's principal argument present us with a novel question. In one sense, U-Haul is obviously a real party in interest. It receives a portion of the revenues from each rental of a U-Haul trailer. To the extent that U-Haul's suit seeks to recover the damages it alone has suffered from Jartran's false advertising, U-Haul is the only real party in interest. But U-Haul also seeks to recover the damages inflicted on all the other members of the U-Haul System. This fact exposes the strength of Jartran's contention. Is U-Haul the real-party-in-interest with respect to these damages?

Although the parties have addressed this problem solely in the context of Fed.R. Civ.P. 17, we also must consider Fed.R. Civ.P. 19 (governing joinder of necessary parties). Fed.R.Civ.P. 17 governs only the right of U-Haul to bring the suit. It is Fed.R.Civ.P. 19 that tells us whether the appropriate parties are before the court. Both rules must be satisfied before the case may proceed. *See* 6 Wright & Miller § 1543, at 645.[2] Because of the contention that U-Haul should not be able to recover money for injuries sustained by the other members of the U-Haul System, we think Fed.R.Civ.P. 19 is implicated.

■ As Jartran points out, Fed.R.Civ.P. 17(a)[3] does not itself define real party in interest. Instead, it allows a federal court to entertain a suit at the instance of any party to whom the relevant substantive law grants a cause of action. *See, e.g., McNeil Construction Co. v. Livingston State Bank,* 300 F.2d 88, 90 & n. 5 (9th Cir.1962); 3A *Moore's Federal Practice* ¶ 17.02, at 17–65; 6 Wright & Miller § 1541, at 635. To determine whether U-Haul is the real party in interest with respect to the damages suffered by those other than itself, we must look to the substantive law that governs this case, Lanham Act § 43(a), which proves to be none too helpful.[4]

**2.** Fed.R.Civ.P. 23 is not relevant to this question. Rules 17 and 19 determine what parties must take part in litigation in the federal courts. Once that determination has been made, Fed.R. Civ.P. 23 allows parties to take part through representatives. In this case, Fed.R.Civ.P. 23 becomes relevant only if U-Haul cannot litigate this case without the participation (whether directly or through class representatives) of the other members of the U-Haul System.

**3.** Fed.R.Civ.P. 17(a) provides:
Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought.... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

**4.** We do not decide here whether federal law governs this question in an ordinary unfair competition suit. This case was brought under

We have found no case under the Lanham Act, or any other statute, considering a question sufficiently like this to provide a basis for analogy.[5] The purpose served by Fed.R.Civ.P. 17(a) does provide some guidance, however. "The modern function of the rule ... is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." Note of Advisory Committee on 1966 Amendment to Fed.R.Civ.P. 17; *accord* 6 Wright & Miller § 1541, at 635–36.

This purpose is reinforced by the relevant portion of Fed.R.Civ.P. 19, which provides:

> A person ... shall be joined as a party in the action if ... he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) *leave any of the persons already parties subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.*

Fed.R.Civ.P. 19(a)(2) (emphasis added). This rule limits the power of plaintiffs to determine who shall be parties in lawsuits they institute. It does so in order to serve three sets of interests. A leading commentator identifies these as " '(1) the interests of the present defendant; (2) the interests of potential but absent plaintiffs and defendants; (3) the social interest in the orderly, expeditious administration of justice.' " 7 Wright & Miller § 1602, at 17 (quoting Reed, *Compulsory Joinder of Parties in Civil Actions*, 55 Mich.L.Rev. 327, 330 (1957)). Each set embodies a purpose designed to afford justice to plaintiffs, defendants, and general public.

In keeping with these ends, both Rules 17(a) and 19 have been construed so as to further the fair and prompt disposition of litigation. *See, e.g., id.* (Rule 19); 6 *id.* § 1541, at 636 (Rule 17); 3A *Moore's Federal Practice* ¶ 17.07, at 17–76 (Rule 17); *id.* ¶ 19.01—1[1], at 19–19 to 19–20 (Rule 19). Our response to Jartran's argument must be fashioned to protect Jartran's interest in the finality of litigation and to protect the rights of all the members of the U-Haul System to obtain a full recovery for their injuries.

■ It is possible that U-Haul is a real party in interest able to represent all System members for the purpose of defining the aggregate damage award. U-Haul's interests on this point are certainly not adverse in any practical way to the interests of the other members of the System. U-Haul has every incentive to litigate aggressively in pursuit of a high recovery for the System as a whole. But even if this incentive is enough to make U-Haul a real party in interest for determining the aggregate amount of damage, it cannot be enough to make U-Haul a real party in interest for determining the allocation of that amount among the individual members of the System. Each member of the U-Haul System, including U-Haul itself, has an incentive to seek a disproportionate share of the total recovery. Also, as a practical matter, to allow U-Haul to dispose of the funds as it sees fit would impair the ability of other members of the System to receive their appropriate share of the recovery.

In addition, Jartran has an interest in the finality of this litigation. Unless the other members of the System are bound by the trial court's finding of liability in the amount of $40 million for injury to the entire System, it would face the possibility of multiple obligations. We do not think this is at all necessary. Under Rule 17(a),

---

§ 43(a), which clearly establishes a federal, rather than a state, claim. *See* 2 J. McCarthy, *Trademarks and Unfair Competition* § 27:3, at 349 & n. 20 (2d ed. 1984).

**5.** One commentator notes: "A real party in interest question seldom will be an issue in a trademark action. In fact, there do not appear to be any reported trademark cases in which Rule 17(a) has been seriously considered." 6 Wright & Miller § 1547, at 666.

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Jartran has made the objection. It remains to be seen whether U-Haul can obtain the ratification, *see, e.g., Southern National Bank of Houston v. Tri Financial Corp.,* 317 F.Supp. 1173, 1187 (S.D.Tex. 1970), *modified on other grounds sub nom., Southern National Bank of Houston v. Crateo, Inc.,* 458 F.2d 688 (5th Cir. 1972);. or joinder of the other System members.

We think it appropriate that Rule 19 apply so that as many members of the System as possible can be joined. Compulsory joinder would protect Jartran's interest in the finality of the litigation and also protect the rights of all the members of the U-Haul System to obtain a full recovery for their injuries. We therefore remand the case to allow U-Haul to bring in as many members of the System as it can. We note that, to the extent U-Haul obtains the ratification or joinder of the absent members of the System, "such ratification [or] joinder ... shall have the same effect as if the action had been commenced in the name of the real party in interest." Fed.R.Civ.P. 17(a); *see* 6 Wright & Miller § 1555.

To the extent that U-Haul is unable to get ratification from, or joinder of, all other System members, it is entitled only to that portion of the recovery that represents damages to U-Haul itself and to those System members that do ratify or join. We express no opinion on the effect of such a recovery by U-Haul on the entitlement of each remaining member of the System to damages for injury inflicted upon it by Jartran's false advertising.[6] But we do hold that Jartran need not pay damages in *this* case to any System member that has neither ratified U-Haul's action nor been joined to it.

## III.

## LIABILITY

Jartran raises three challenges to the district judge's conclusion that Jartran is liable to U-Haul. First, it argues that the injury suffered by U-Haul was insufficiently direct to support a recovery under the Lanham Act. Second, it argues that actual deception and reliance of consumers can be proved only by surveys of actual consumers. Finally, it argues that it is inappropriate to presume actual deception and reliance from proof of Jartran's intent to deceive. Because we reject the first and third challenges, we affirm the district court's findings of deception and reliance. Addressing the second challenge thus becomes unnecessary.

### A. *Directness of Injury*

Jartran's basic complaint is that much of the injury in question was suffered by the other members of the U-Haul System, rather than by U-Haul itself. Relying on antitrust precedents, it argues that U-Haul cannot recover for these injuries. Our real-party-in-interest holdings may rob these precedents of force. If, on remand, the other members of the System are joined in or ratify U-Haul's action and their inclusion is related back, this contention would become moot.

### B. *Presumption of Consumer Deception and Reliance*

■ In Conclusion of Law 10, the district court held that "[p]ublication of deliberately false comparative claims gives rise to a presumption of actual deception and re-

---

**6.** *Cf. Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 123, 88 S.Ct. 733, 745, 19 L.Ed.2d 936 (1968) (per Harlan, J.) (expressly not foreclosing "an examination in future cases to see whether an injustice is being, or might be, done to the substantive, or, for that matter, constitutional, rights of an outsider by proceeding with a particular case").

liance. Defendants have not rebutted this presumption." *U-Haul International, Inc. v. Jartran, Inc.*, 601 F.Supp. 1140, 1149 (D.Ariz.1984). Jartran argues that this conclusion is not supported by the law of this circuit.

To support the district court's conclusion, U-Haul cites a false advertising case granting injunctive relief, *McNeilab, Inc. v. American Home Products Corp.*, 501 F.Supp. 517 (S.D.N.Y.1980), and two of our "palming off" cases granting damages, *National Van Lines v. Dean*, 237 F.2d 688, 692 (9th Cir.1956); *National Lead Co. v. Wolfe*, 223 F.2d 195, 202, 205 (9th Cir.), *cert. denied*, 350 U.S. 883, 76 S.Ct. 135, 100 L.Ed. 778 (1955). Jartran responds by pointing out that *McNeilab* was an injunction case, in which the burden of proof is substantially lower, and that the two "palming off" cases are not comparative advertising cases as is this one.

Jartran's distinctions do not undermine the force of U-Haul's argument. It is not easy to establish actual consumer deception through direct evidence. The expenditure by a competitor of substantial funds in an effort to deceive consumers and influence their purchasing decisions justifies the existence of a presumption that consumers are, in fact, being deceived. He who has attempted to deceive should not complain when required to bear the burden of rebutting a presumption that he succeeded.

The district judge's application of this presumption was fair and in keeping with our early "palming off" precedents. We hold that it was correct to apply it in this context.

## IV.

### CALCULATION OF THE AWARD

Jartran raises numerous challenges to the district court's calculation of the award. Because the court, quite helpfully, fixed the same amount of the award under two distinct theories, we must affirm the award if it is proper under either theory. We hold that the calculation of the award based on U-Haul's corrective-advertising-expenditures theory, as enhanced under section 35 of the Lanham Act, was correct.

### A. *Calculation of Damages*

■ Jartran does not dispute the propriety of basing a damage award on corrective advertising expenditures. *See, e.g., Otis Clapp & Son, Inc., v. Filmore Vitamin Co.*, 754 F.2d 738, 745 (7th Cir.1985). Jartran does argue, however, that the district court did not have discretion to award damages for corrective advertising expenditures more than twice the size of the original advertising expenditures. Jartran relies on *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1375 (10th Cir.1977), *cert. dismissed under Sup.Ct.R. 60*, 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978). There the court reversed a jury verdict and held that the plaintiff's recovery for corrective advertising was limited to 25% of the defendant's wrongful expenditures. *Big O*, however, is plainly inapplicable. It explicitly distinguishes itself from the plentiful earlier precedent allowing recovery of *actual* corrective advertising expenditures. In *Big O* the plaintiff had not made any corrective advertising expenditures. *See id.; see also Cuisinarts, Inc. v. Robot-Coupe International Corp.*, 580 F.Supp. 634, 641 (S.D.N.Y.1984) (limiting *Big O* in the same manner). It provides no basis for overturning the district court's award in this case of actual corrective advertising expenditures.

Jartran's complaints as to the propriety of U-Haul's corrective advertising campaign should have been addressed to the district court. That court did consider arguments that the advertising was not necessary to correct harm to the U-Haul trademark; but it rejected them. We agree with the district court's conclusion.

### B. *Extraordinary Remedies under Lanham Act Section 35*

■ Jartran attacks the district court's award, under section 35 of the Lanham Act, 15 U.S.C. § 1117, of Jartran's profits from false advertising, double damages, and attorney fees. Jartran's position is

supported by the text of the section, which applies only to "a violation of any right of the registrant of a mark registered in the Patent and Trademark Office." U-Haul's trademark is not so registered.

Jartran, however, confronts the fact that these remedies have been held by this court to be available in actions under Lanham Act § 43(a). *See Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). We explained: "[W]e can see no reason to distinguish between registered and unregistered trademarks.... The type of conduct that these damages should deter is unrelated to the type of intellectual property protected." *Id.* at 1026. Jartran tries to distinguish this case on two grounds. First, that it is not a false advertising case. Second, that our decision in *Transgo* expressly limited its holding to the attorneys' fee remedy, refusing to address the other remedies provided by section 35.

Neither argument is persuasive. Not only do we see no significant distinction between false advertising cases and other cases under Lanham Act § 43(a), *see id.*, but also the rationale for the *Transgo* decision, *viz.* the need for remedial consistency in the recovery of attorneys' fees, is no less pressing when a court considers awarding damages and unlawful profits. We hold that the district court was correct in applying section 35 to this case.

■ Finally, Jartran contends that the district court should not have included the $6 million cost of its advertising campaign as "profits" within the meaning of Lanham Act § 35 because Jartran did not make a profit during the relevant period. It is irrelevant that Jartran *as a whole* failed to turn a profit during the period of the advertising. The amount to be awarded is the financial benefit Jartran received because of the advertising. *Cf. Otis Clapp & Son, Inc., v. Filmore Vitamin Co.*, 754 F.2d 738, 744–45 (7th Cir.1985) (affirming award of profits even though defendant's overall operations were unprofitable). The

district court assumed that the financial benefit was at least equal to the advertising expenditures. Considering the detailed evidence that the court had of Jartran's swift revenue growth and the connection of that growth to Jartran's advertising, that finding is not clearly erroneous. We affirm the district court's award.

## V.

## INJUNCTION

In Conclusion of Law 34, the district court held that U-Haul was entitled to a permanent injunction against Jartran's future publication of the "advertisements found to be false and deceptive in this proceeding." 601 F.Supp. at 1151. The district court was correct in granting this injunctive relief. Nothing is clearer in the emerging law of commercial free speech than that false or misleading commercial speech is clearly "subject to restraint." *Bates v. State Bar of Arizona*, 433 U.S. 350, 383, 97 S.Ct. 2691, 2709, 53 L.Ed.2d 810 (1977); *see Encyclopaedia Britannica, Inc. v. FTC*, 605 F.2d 964, 972 (7th Cir. 1979) (commenting that "[i]t is also beyond question ... that deceptive advertising is subject to regulation"), *cert. denied*, 445 U.S. 934, 100 S.Ct. 1329, 63 L.Ed.2d 770 (1980).

But the language of the injunction is much broader than the Conclusion of Law and, perhaps unintentionally, raises First Amendment concerns. As currently written, the injunction seems to prohibit future comparative advertising even if it is truthful. We are mindful of our obligation to prevent Jartran from misleading the public in the future with its deceptive ads. But we can fulfill that obligation while protecting Jartran's First Amendment rights—and simultaneously increase the "informed and reliable decisionmaking" that honest advertising can provide. *Standard Oil Co. v. FTC*, 577 F.2d 653, 662 (9th Cir.1978) (quoting *Bates*, 433 U.S. at 364, 97 S.Ct. at 2699

(1977)). We therefore modify the injunction as follows:[7]

IT IS ORDERED that defendant JARTRAN, INC., its officers, agents, servants, employees, consultants and all those persons in active concern or participation with them, be and they are hereby permanently enjoined and restrained from publishing or otherwise disseminating any advertisement or media press release, that:

(1) [Purports to state] *Falsely or deceptively states* both the prices charged by U-Haul and those charged by Jartran and/or *falsely or deceptively* states that Jartran saves consumers money by reason of the prices charged by Jartran while mentioning, displaying, or otherwise directly referring to U-Haul or any of its equipment;

(2) *Falsely or deceptively* represents, either expressly or impliedly, that Jartran trucks or trailers are safer than all U-Haul trucks or trailers;

(3) *Falsely or deceptively* represents, either expressly or impliedly, that Jartran trucks or trailers are more stable than all U-Haul trucks or trailers;

(4) *Falsely or deceptively* represents, either expressly or impliedly, that Jartran trucks are more fuel efficient than all U-Haul trucks; or

(5) *Falsely or deceptively* represents, either expressly or impliedly, that Jartran equipment is in any manner better designed than all U-Haul equipment.

## VI.

### ALTER EGO

■ Jartran contends that the district court misinterpreted Florida law when it held that Jartran and James Ryder are alter egos. We review this question of state law de novo. *See In re McLinn,* 739 F.2d 1395 (9th Cir.1984) (en banc).

The parties agree that the controlling Florida precedent is *Dania Jai-Alai Palace, Inc. v. Sykes,* 450 So.2d 1114 (Fla. 1984). In that case, the Florida Supreme Court stated that individual stockholders can be liable for the debts of corporations only after a showing that " 'the corporation is in actuality the alter ego of the stockholders and that it was organized or after organization was employed by the stockholders for fraudulent or misleading purposes.' " *Id.* at 1120 (quoting *Advertects, Inc. v. Sawyer Industries,* 84 So.2d 21, 24 (Fla.1955)). The court went on to comment: " 'The corporate veil will not be penetrated ... unless it is shown that the corporation was organized or employed to mislead creditors or to work a fraud upon them.' " *Id.* (quoting *Advertects,* 84 So.2d at 23).

Relying on this case, the district court concluded that "[t]he determination that a corporation is the alter ego of its shareholder does not require a showing of actual fraud on the part of the shareholder." 601 F.Supp. at 1150–51 (Conclusion of Law 29). This conclusion is both inaccurate and overly broad. *Sykes* makes clear that a necessary predicate for an alter ego finding is fraudulent or misleading conduct *directed at creditors.*

The district court made no finding of fraud in this case. Moreover, we do not believe it could have made such a finding. We have found ample evidence that Mr. Ryder controlled Jartran and that he subsidized it heavily, *see, e.g.,* Brief of Appellee U-Haul International, Inc. at 48 n. 102 (recounting the evidence), but we have found no evidence that Ryder used the corporation to deceive creditors. Accordingly, we reverse the district court's alter ego finding.

## VII.

### ATTORNEYS' FEES ON APPEAL

■ U-Haul seeks attorneys' fees on appeal under section 35 of the Lanham Act, 15 U.S.C. § 1117. That section states: "The court in exceptional cases may award reasonable attorney fees to the [prevailing] party." Apparently no panel of this circuit has ever awarded fees under this provision. We have, however, upheld a trial court's grant of attorneys' fees under this provision in a case when the defendant's acts "constituted extraordinary, malicious, wan-

---

**7.** Additions are italicized, deletions are bracketed.

ton, and oppressive conduct." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1026 (9th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986).

Without deciding who prevailed on this appeal, we hold that Jartran need not pay U-Haul's attorneys' fees on appeal. There is nothing "exceptional" about Jartran's appealing this $40 million judgment. As this opinion indicates, difficult issues were raised by this appeal. It was entirely reasonable for Jartran to challenge the district court's decision. Jartran's brief was professionally written and raised important legal questions. *Cf. Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant,* 771 F.2d 521, 526–27 (D.C.Cir.1985) (relying on malicious litigation tactics to justify a fee award under section 35). To permit the malicious conduct that caused this controversy to justify imposing a penalty on the bringing of this appeal would amount to causing additional punitive damages to wear the disguise of attorneys' fees.

AFFIRMED IN PART; MODIFIED IN PART; REVERSED IN PART; and REMANDED FOR FURTHER PROCEEDINGS.