**EARTHQUAKE SOUND CORPORATION, Plaintiff–Appellee,**

v.

**BUMPER INDUSTRIES, Defendant–Appellant.**

**Earthquake Sound Corporation, Plaintiff–Appellee,**

v.

**Bumper Industries, Defendant–Appellant.**

**Nos. 00–16532, 01–15121.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 2002.

Filed Dec. 16, 2003.

John H. Pelzer, Koorosh Afshari, Fort Lauderdale, FL, for the appellant.

Koorosh Afshari and Gregory N. Owen, Owen, Wickersham & Erickson, P.C., San Francisco, CA, for the appellee.

Before FERGUSON, BRUNETTI, and TASHIMA, Circuit Judges.

Opinion by Judge Brunetti; Concurrence by Judge Ferguson

## OPINION

BRUNETTI, Circuit Judge.

These consolidated appeals concern two attorney's fees orders arising from a trademark infringement suit. For the reasons stated in this opinion, we affirm.

### I. Background

#### A. Prior Proceedings

Appellee Earthquake Sound Corporation ("Earthquake") and Appellant Bumper In-

dustries ("Bumper") sell car audio equipment. Earthquake sued Bumper in 1995 for trademark infringement in violation of 15 U.S.C. § 1114, unfair competition in violation of 15 U.S.C. § 1125(a), and trademark infringement and deceptive trade practices in violation of state law. Earthquake claimed that Bumper's use of the word "Carquake" on car audio products infringed its "Earthquake," "Bass–Quake" and "Quake" marks.

Earthquake moved for summary judgment on the questions of liability for infringement and entitlement to attorney's fees. On October 10, 1997, the district court granted Earthquake's motion. The district court determined that Bumper was infringing Earthquake's "Earthquake" and "Bass–Quake" marks, ordered Bumper to pay damages in an amount to be determined later, and imposed a permanent injunction. The district court also determined that the infringement was willful, deliberate and knowing. The district court therefore ordered Bumper to pay Earthquake's attorney's fees and costs pursuant to 15 U.S.C. § 1117(a), but deferred consideration of the amount of the fees until a later date. Bumper then filed Rule 59(e) and Rule 60(b) motions, both of which were denied.

Bumper appealed. In *Earthquake Sound Corp. v. Bumper Indus., Inc.*, 188 F.3d 513, 1999 WL 638681 (9th Cir. Aug.18, 1999) (unpublished memorandum), we affirmed as to liability for infringement of the "Earthquake" mark and upheld the permanent injunction. (Accordingly, we focus only on the "Earthquake" mark in the present appeals.) As for damages and attorney's fees, we held that we did not have jurisdiction to consider these issues because the district court had not yet determined the amounts, and there was thus no final order.

Subsequently, Earthquake filed a motion with the district court for its attorney's fees, but decided to forego its compensatory damages award. In an order entered June 29, 2000 ("First Fee Order"), the district court determined that the amount of Earthquake's attorney's fees was $109,367.00 and that its costs were $2416.98. The First Fee Order concerned only the amount of fees and costs and did not address the question of Earthquake's entitlement to them. Bumper's only opposition to the amount of fees was to note that its gross sales from the infringing products had been only $25,000. The First Fee Order is the subject of the appeal in No. 00–16532.

After the district court entered the First Fee Order, Bumper filed a motion for a stay of enforcement and for a waiver or reduction of the supersedeas bond. The district court denied the motion and found that it was frivolous and had been filed in bad faith. The district court, pursuant to its inherent powers, ordered Bumper to pay Earthquake's attorney's fees incurred in defending the motion. In an order entered January 8, 2001 ("Second Fee Order"), the district court awarded Earthquake $2893.50 in attorney's fees in relation to the motion. The Second Fee Order is the subject of the appeal in No. 01–15121.

On March 8, 2001, while the present appeals were pending, we ordered a limited remand to the district court pursuant to *Crateo, Inc. v. Intermark, Inc.*, 536 F.2d 862 (9th Cir.1976). The limited purpose of the remand was to allow the district court to articulate its method in determining the amount of the First Fee Order. The district court then entered an order on July 25, 2001, stating the methodology used for the First Fee Order. We describe this order more fully below.

**B. The Infringement**

When the district court ruled on the summary judgment motion establishing

Earthquake's entitlement to attorney's fees, the record contained substantial undisputed evidence bearing on both infringement and willfulness. Earthquake had been using its "Earthquake" mark continuously since 1988. Earthquake eventually registered its "Earthquake" mark and, later, the mark became incontestable. Earthquake was enjoying success with its "Earthquake" products as of the early 1990s.

Bumper became aware of the "Earthquake" mark in 1990 when it attended a trade show that Earthquake was also attending. Bumper sells the same type of product as Earthquake, i.e., car audio products such as speakers. Bumper competes with Earthquake, and they use the same marketing channels. Although the "Carquake" and "Earthquake" marks are visually distinct, they have an obvious aural and connotative similarity. There was some dispute in the evidence concerning whether the consumers of car audio products were sufficiently sophisticated in their purchasing decisions such that they would not be confused as to who was selling the "Carquake" products.

Bumper filed an intent-to-use application with the United States Patent and Trademark Office ("PTO") relating to its "Carquake" mark in July 1993. The next month, August 1993, Bumper contacted at least one of Earthquake's distributors to market "Carquake" audio products. Bumper told this distributor that its products were the same as Earthquake's products, only cheaper. Bumper's "Carquake" products had model numbers that were nearly identical to the ones used by Earthquake, and it designated its products "CQ", which was similar to the "EQ" used on Earthquake's "Earthquake" line. Also, the warranty for at least some of the "Carquake" products does not state Bumper's name anywhere on it, but rather requires consumers to ship defective goods to the "CARQUAKE Warranty Service Center" and provides a street address.

In September 1993, after Earthquake learned of Bumper's actions, it called Ray Behnejad, Bumper's Vice President, and demanded that Bumper stop using the "Carquake" mark to sell car audio products. There is some dispute as to what transpired during the call. As of the time that the district court ruled on the summary judgment motion, the record contained undisputed evidence that, during that call, Behnejad agreed to stop using the "Carquake" mark. This fact was contained in the Declaration of Joseph Sahyoun and referenced in Earthquake's memorandum of points and authorities, both of which were filed concurrently with its summary judgment motion. This fact, however, was not mentioned in Earthquake's statement of undisputed facts, which was also filed with the motion. The district court referred to this fact in its order granting Earthquake's motion, correctly noting that Earthquake had offered undisputed evidence of Bumper's agreement to stop using the "Carquake" mark. The district also stated that Earthquake had offered evidence of an admission by Bumper that its mark was causing confusion. To the extent that the district court inferred this admission from the Sahyoun Declaration's statement regarding Bumper's agreement to stop using the "Carquake" mark, we note that the Sahyoun Declaration indicates only that Bumper agreed to stop using the mark, but not that Bumper admitted to a likelihood of confusion. After the district court's order, Bumper filed a Rule 59 motion on October 23, 1997. In the Rule 59 motion, Bumper asserted that it had made no such agreement to stop using the "Carquake" mark, but did not submit any supporting evidence. Nearly two and a half years later, on February 11, 2000, when Bumper sought to further contest Earthquake's en-

titlement to attorney's fees prior to the First Fee Order, Bumper submitted a Declaration of Ray Behnejad in which Behnejad denied having agreed to stop using the "Carquake" mark.

Despite Earthquake's contact with Bumper in September 1993 regarding the "Carquake" mark, Bumper continued on course with its "Carquake" campaign. Bumper could not recall having consulted at this time with an attorney, or making any investigation, about possible trademark infringement.

In November 1993, Bumper's application to publish its "Carquake" mark was approved by a PTO examining attorney. The application was published in January 1994. When Earthquake saw the application, it filed an opposition with the Trademark Trial and Appeal Board. Those proceedings were suspended once this case began.

After the publication of the "Carquake" application, Bumper introduced its "Carquake" speakers at the 1994 Consumer Electronics Show ("CES"). Several consumers and dealers attending the 1994 CES informed Earthquake that they believed the "Carquake" products to be an extension of Earthquake's line. In February 1994, Earthquake sent a letter to Bumper reiterating its concern about trademark infringement. In December 1994, Earthquake sent another letter to Bumper, this time stating that it would file suit against Bumper if Bumper did not agree to stop using the "Carquake" mark. Bumper did not respond to the letter. Instead, Bumper promoted its "Carquake" products at the 1995 CES. As with the 1994 CES, consumers and dealers were confused by the "Carquake" products. After the 1995 CES, Earthquake filed the present case.

Earthquake submitted evidence of numerous instances of actual confusion due to the "Carquake" mark from early 1995 through the time that Earthquake filed its summary judgment motion in January 1997. Earthquake submitted evidence showing that several customers of stores in Ohio were confused by the "Carquake" mark. Approximately twelve customers of Auto Accents asked the manager about a "Carquake" speaker from Earthquake. Two customers of Stereo Wholesale Outlet told the owner that they had heard of a new "Carquake" speaker and believed that it was an Earthquake product. The store owner, believing that there might be new "Carquake" products from Earthquake, then contacted Earthquake to ask why he had not been given the opportunity to sell them. Finally, a customer of Jim Hayden's Auto Expressions told a salesperson there that Earthquake was selling "Carquake" speakers. The vice president of the store contacted Earthquake with the same concern expressed by the owner of Stereo Wholesale Outlet.

Bumper asserted several arguments in defense of its use of the "Carquake" mark, none of which proved successful. Bumper argued, among other things, that the registration for the "Earthquake" mark was not valid, there were other uses of marks incorporating the term "quake," and it had not received any customer complaints suggesting that customers were confused about the source of the "Carquake" products.

## C. Remand to Explain the Methodology for the First Fee Order

On July 25, 2001, during the *Crateo* remand, the district court entered its order articulating the methodology it had used in calculating Earthquake's attorney's fees for the First Fee Order. The district court stated that it had begun its calculation using the lodestar method. In doing so, the district court had determined the number of hours worked by each of Earth-

quake's attorneys, paralegals and clerks. It had then multiplied each person's hours by his or her hourly rate. Finally, it had added these figures together.

Next, the district court had performed a reasonableness analysis of the rates charged and hours worked. As the district court noted, Bumper had not objected, prior to the First Fee Order, to the reasonableness of the rates charged or number of hours worked by Earthquake's attorneys. Earthquake, by contrast, had submitted evidence relating to the reasonableness of its rates. Earthquake had submitted an affidavit of an attorney practicing in the same region as Earthquake's attorneys opining that Earthquake's attorney rates were reasonable and customary, and that Earthquake's attorneys had a favorable reputation in their area for intellectual property litigation. Also, Earthquake's attorneys had maintained their hourly rate for this case despite having increased it for other matters.

As for the number of hours billed by Earthquake's attorneys, the district court noted that Bumper had not challenged the reasonableness of the hours prior to the First Fee Order. In fact, the first time Bumper attacked the reasonableness of the hours worked was during the *Crateo* remand. The district court had determined that the hours spent on this case were reasonable, especially considering Bumper's vigorous defense. The district also noted the quality of Earthquake's summary judgment motion and contrasted it to that of Bumper's opposition (prepared by Bumper's prior counsel). Finally, the district court noted that, after the summary judgment motion, Bumper had filed unsuccessful motions for relief or reconsideration.

Finally, the district court stated that it had considered the factors described in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir.1975), that might have

caused it to adjust the lodestar figure. The district court noted that Earthquake had obtained the results it sought, the amount involved in the case was not limited to Bumper's sales of infringing product but also covered the protection of Earthquake's marks, Bumper had not voluntarily ceased its infringing activities, and there had been no request for fees for local counsel. The district court also stated that Earthquake helped limit the litigation by deciding to forego its damages award after its successful appeal. The district court concluded by stating that it had not considered the following other factors given the lack of evidence: preclusion of other work, the nature of the fee, time limitations, the undesirability of the case, or the length of the relationship between Earthquake and its attorneys.

## II. Discussion

Bumper advances four arguments on appeal. First, Bumper argues that the district court erred by not stating in the First Fee Order that the case is exceptional, or articulating findings in that order to support the award of attorney's fees. Second, Bumper argues that the evidence presented by Earthquake does not support a conclusion that this case is exceptional, that Bumper presented enough evidence of good faith to preclude summary judgment, and that the low amount of damages suffered by Earthquake should have resulted in a lower amount of fees in the First Fee Order. Third, Bumper argues that the amount of attorney's fees in the First Fee Order should be reduced to avoid duplication. Fourth, Bumper argues that the Second Fee Order was issued in error because the district court did not consider mandatory fee guidelines, fee records, or what constituted customary fees. We address each argument in turn.

## A. Presence of Findings as to Exceptionality

 "The court in exceptional [trademark] cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). We review an order granting summary judgment de novo. *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir.1998). The interpretation of what constitutes an "exceptional case" is a question of law and we review that de novo as well. *Stephen W. Boney, Inc. v. Boney Serv., Inc.*, 127 F.3d 821, 825 (9th Cir.1997). Where a trademark case is exceptional, we review a district court's decision to award attorney's fees for an abuse of discretion. *See id.*

 A trademark case is exceptional where the district court finds that the defendant acted maliciously, fraudulently, deliberately, or willfully. *Stephen W. Boney*, 127 F.3d at 825–26. A district court's failure to articulate its findings underlying its award of attorney's fees can be an abuse of discretion. *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 66 (5th Cir.1992); *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 921 (Fed.Cir. 1984). Such failure is not an abuse of discretion, however, if the record supports the decision of the district court. *Tamko Roofing Prod., Inc. v. Ideal Roofing Co.*, 282 F.3d 23, 31 (1st Cir.2002) ("Where the facts of record amply explain the decision, we will not find that the mere failure of the trial judge to be more explicit amounts to an abuse of discretion.").

 In the present case, Bumper argues that the district court abused its discretion in the First Fee Order by (1) not stating that this was an exceptional case, and (2) not making findings to support that conclusion. Bumper, however, is confusing the summary judgment order and the First Fee Order. The pertinent findings relating to exceptionality were adequately expressed in the district court's summary judgment order, which is the basis for Earthquake's entitlement to its attorney's fees. The First Fee Order, by contrast, merely concerned the amount of the fees to which Earthquake was already entitled.

The district court's summary judgment order states, "The Court has no difficulty agreeing that Bumper wilfully, deliberately, and knowingly infringed [the] Earthquake mark." The district court then went on to articulate the reasons for this conclusion. The district court stated that Earthquake "promptly informed Bumper of the confusion caused by the Carquake mark," that there was undisputed evidence that "on at least one occasion Bumper ... stated that it would cease using the Carquake mark," that "[d]espite this statement, Bumper continued to market Carquake speakers," and that Earthquake "continued to inform Bumper of the confusion caused by the Carquake mark." These findings did not need to be reiterated in the First Fee Order, which merely concerned the amount of the fees, rather than Earthquake's entitlement to them. Although we consider below whether this was in fact an exceptional case, we find no fault with the form of the district court's summary judgment order or the First Fee Order.

## B. Sufficiency of Showing of Exceptionality

 As stated above, a case is exceptional within the meaning of 15 U.S.C. § 1117(a) where the infringement is willful, deliberate, knowing or malicious. *See Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 825 (9th Cir.1996) (attorney's fees awarded on appeal where defendant knowingly and intentionally infringed in order to cause confusion and interfere with plaintiff's environmental agenda); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1027 (9th Cir.1985)

(affirming award of attorney's fees where plaintiff was successful in prevailing over defendant on most claims and record con- tained substantial evidence of deliberate infringement, including continued infringe- ment in violation of injunction); *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1384 (9th Cir.1984) (affirming entitlement to at- torney's fees where record contained evi- dence of intent to deceive consumers); *cf. Stephen W. Boney*, 127 F.3d at 825–28 (affirming denial of attorney's fees for pre- vailing defendant where record did not indicate anything other than legitimate ef- fort by plaintiff to preserve its rights); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1409–10 (9th Cir.1993) (affirming dis- trict court's denial of attorney's fees where infringement not intentional and nothing else made case exceptional); *U–Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1043– 44 (9th Cir.1986) (denying attorney's fees for appeal where it was "entirely reason- able" to appeal a $40 million judgment involving important legal questions).

■ Bumper asserts that knowing, will- ful, deliberate or malicious conduct does not per se show exceptionality. The cases Bumper cites for this proposition, however, are either distinguishable or do not reflect the law of this circuit. One such case is *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1192 (6th Cir.1997), in which the Sixth Circuit held that the dis- trict court's finding of willful, deliberate and intentional infringement in the context of an analysis under a separate attorney's fees provision would not necessarily amount to exceptionality under § 1117(a). Although there is a statement in *U.S. Structures* stating that exceptionality does not necessarily follow from a finding of malicious, willful, fraudulent or deliberate infringement, we note that this statement is a dictum and, to the extent that it is inconsistent with the law of this circuit, we do not adhere to it. Another case cited by Bumper is *Service Ideas, Inc. v. Traex*

*Corp.*, 846 F.2d 1118, 1125 (7th Cir.1988), in which the Seventh Circuit pointed out that the district court had not stated any findings to support a conclusion of excep- tionality, and had actually stated that the case was not exceptional. In a third case cited by Bumper, *U–Haul International*, 793 F.2d 1034, we addressed the question of whether to award fees for the appeal itself, rather than for the district court proceedings, and held that the appeal was "entirely reasonable" because the case in- volved a $40 million judgment and involved important questions of law. Finally, Bumper cites *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 556 (5th Cir.1998), *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1159 (7th Cir.1994), and *Van- wyk Textile Systems, B.V. v. Zimmer Ma- chinery of America, Inc.*, 994 F.Supp. 350, 382 (W.D.N.C.1997), to support the notion that exceptionality requires egregious cul- pability, such as bad faith or fraud, on the part of the infringer. As we have previ- ously stated, however, "[w]hile a finding that the losing party has acted in bad faith may provide evidence that the case is ex- ceptional, other exceptional circumstances may warrant a fee award." *Stephen W. Boney*, 127 F.3d at 827 (citation omitted).

The record at the time of the summary judgment order in this case contained suf- ficient undisputed evidence showing the willful and deliberate nature of Bumper's infringement. For one thing, this was not a particularly close case on the question of infringement. The "Earthquake" mark is strong, Bumper knew of the mark for ap- proximately three years before filing its application to publish the "Carquake" mark with the PTO, and the "Carquake" mark is quite similar to the "Earthquake" mark. The parties sell the same products through the same marketing channels. Bumper even informed one distributor that its products were the same as Earth- quake's but cheaper. Bumper used simi-

lar product identification codes, creating further similarities between the products. The warranty for at least some of the "Carquake" products conceals the fact that the products are sold by Bumper. *See Transgo*, 768 F.2d at 1011 (defendant's identity concealed on product instruction sheets and during phone calls to defendant's help line). Most importantly, there was ample evidence of actual confusion.

Earthquake promptly notified Bumper that it believed Bumper's "Carquake" mark was infringing its "Earthquake" mark. Bumper, however, did not establish that it took reasonable measures, such as consulting an attorney, to investigate possible infringement liability when it was informed by Earthquake of a potential problem. Earthquake continued to notify Bumper of the problem, and even offered to settle the matter without litigation. Bumper refused, however, and persisted in marketing the "Carquake" line.

According to the record as it existed when the district court ruled on the summary judgment motion, Bumper reneged on its agreement to stop using the "Carquake" mark. The district court properly disregarded the exceedingly untimely Behnejad Declaration that Bumper submitted well after the summary judgment proceedings but prior to the First Fee Order. That declaration should have been filed during the summary judgment proceedings. Bumper argues that Earthquake's failure to include mention of the agreement in its statement of undisputed facts induced Bumper to not respond. We are not convinced. The fact was referenced in Earthquake's memorandum of points and authorities, and so this was not a situation involving an obscure fact buried in a voluminous record. Yet even assuming that the reference in the memorandum of points and authorities was not enough, the district court relied on this fact in its summary judgment order. At that point,

Bumper was on notice that this fact was important. Indeed, Bumper argued against this fact in its Rule 59 motion, but submitted no countervailing evidence in support of its argument. Thus, the district court properly determined that Bumper reneged on its agreement to stop using the "Carquake" mark, and this fact further adds to the exceptional nature of this case.

Bumper next argues that there was evidence in the record of its good faith that should have precluded summary judgment. *See Pebble Beach Co.*, 155 F.3d at 556. Bumper argues that its good faith is apparent given certain differences between its products and those of Earthquake, the fact that it obtained approval from the PTO before using the "Carquake" mark, and the purported absence of an agreement to stop using the "Carquake" mark.

Bumper's claims of good faith are unavailing. The issue is not necessarily one of bad faith: willful or deliberate infringement will suffice. Also, Bumper's assertion regarding its PTO proceedings fails because Bumper only obtained approval to publish its application—there was no adversarial contest regarding infringement. As noted above, the totality of the circumstances shows that the trademark infringement issue was not close, despite differences among certain of the parties' products. Indeed, it is undisputed that both Earthquake and Bumper sell car audio products such as speakers. Also, as noted, evidence supporting Bumper's assertion that it did not agree to stop using the mark was not on the record as of the time the district court granted the summary judgment, and was properly disregarded later.

Finally, the fact that Bumper had only limited sales success from its infringement does not require a finding that the infringement was not willful and deliberate.

Indeed, a trademark holder should not be precluded from recovering attorney's fees simply because the deliberate infringer is not greatly successful in its business.

The total picture in this case is one of deliberate, willful infringement, and the district court did not err in awarding Earthquake its attorney's fees. Although the facts of this case do not involve the unfair political manipulation in *Committee for Idaho's High Desert*, or the violation of the injunction in *Transgo*, they do indicate willful, deliberate infringement. Bumper utilized a mark that was similar to that of its competitor, was informed of actual confusion, and deliberately chose not to make a reasonable effort to ascertain whether it might actually be infringing. Bumper persisted despite further attempts by Earthquake to inform Bumper of consumer confusion. And, as far as the properly submitted facts of this case indicate, Bumper agreed to cease using the "Carquake" mark and then reneged on that agreement. We thus hold that this is an exceptional case within the meaning of 15 U.S.C. § 1117(a) such that the district court did not abuse its discretion in awarding Earthquake its attorney's fees.

### C. Reduction of Allegedly Duplicative Fees

■ As Bumper correctly points out, it is appropriate for a district court to reduce duplicative fees when awarding attorney's fees. *Outdoor Sys., Inc. v. City of Mesa*, 997 F.2d 604, 620 (9th Cir.1993). Bumper claims that where one attorney reviews another's work, the time spent is duplicative and therefore not recoverable. *See Trimper v. City of Norfolk*, 58 F.3d 68, 76–77 (4th Cir.1995). Bumper argues that the district court should have reduced the award during the *Crateo* limited remand due to certain conferences that it claims constitute duplication. The amount at issue is somewhere between $13,465.50 and

$32,433.00, out of the $109,367.00 award in the First Fee Order.

Bumper waived its challenge to the reasonableness of the award of attorney's fees by not challenging it prior to the First Fee Order. That was when the district court made its determination, and that would have been the proper time for Bumper to challenge the amount of the award. *S Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 628 (7th Cir.2001) (losing party waived its ability to challenge amount of attorney's fees by failing to make timely specific objections). At that time, Bumper was aware of what Earthquake was requesting. Bumper failed to make the challenge at that time.

■ Bumper did not assert its duplicativeness challenge until the *Crateo* limited remand. Yet when the district court accepted the *Crateo* remand, it was authorized only to articulate the methodology that it had previously used for reaching the amount that it did; it was *not* authorized to reexamine the factual basis for the amount of its award. *See Allard Enter., Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 570 (6th Cir.2001). Finally, Bumper's only timely challenge to the amount of the award, based on the fact that it had only a small amount of profit, does not require lowering the amount of the award in this case for the reason stated above. Given the methodology articulated in the district court's thorough order during the *Crateo* remand, which we have extensively described above, we hold that the district order did not abuse its discretion in setting the amount of the First Fee Order. *See Transgo*, 768 F.2d at 1027.

### D. The Second Fee Order and Mandatory Fee Guidelines

■ Bumper's last argument concerns the Second Fee Order. The district court awarded Earthquake approximately

$2900 in fees for having to defend against Bumper's motion for a stay of enforcement and a waiver or reduction of the supersedeas bond. A district court has inherent power to award attorney's fees for bad faith conduct. *See Fink v. Gomez,* 239 F.3d 989, 994 (9th Cir.2001). Bumper does not challenge the fact finding that the motion was frivolous and filed in bad faith. Rather, Bumper claims that remand is necessary because the district court did not consider the factors for assessing attorney's fees described in *Kerr,* 526 F.2d at 69–70. *Kerr,* however, involved attorney's fees for a party prevailing on a statutory claim, rather than an award pursuant to a district court's inherent power as a sanction for bad faith conduct in filing a motion. *Id.* at 68–69. At any rate, the district court's order was reasonable given that Earthquake incurred fees at the same rate as those at issue in the First Fee Order, which the district court had already deemed reasonable. There was no abuse of discretion.

## III. Conclusion

We AFFIRM the district court's First Fee Order and Second Fee Order. Given the exceptional nature of this case, we award costs and attorney's fees to Earthquake for this appeal. *See Comm. for Idaho's High Desert,* 92 F.3d at 825. The amount of such award shall be determined pursuant to a timely application therefor, pursuant to Ninth Circuit Rule 39–1.

AFFIRMED.

FERGUSON, Circuit Judge, concurring.

I concur in the decision to affirm the orders of the District Court. However, I do not concur in the analysis set forth by the majority because that analysis fails to acknowledge that "willful and deliberate,"

in the context of attorney's fees awards in exceptional trademark cases, does not mean merely "voluntary" or "intentional." A competitor has the right—even the duty—to intentionally challenge the monopoly created by a weak trademark. A finding that a trademark case is exceptional enough to permit an award of attorney's fees requires something more than a voluntary act by the infringing party.

This Circuit has adopted the Committee on the Judiciary's recommendation that attorney's fees should be available under the Lanham Act "in exceptional cases, *i.e.,* in infringement cases where the acts of infringement can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful'." *Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.,* 692 F.2d 1272, 1276 (9th Cir.1982) (quoting S.Rep. No. 93–1400 (1974)).

In *Lindy Pen Co., Inc. v. Bic Pen Corp.,* 982 F.2d 1400 (9th Cir.1993), we explained that "[w]illful infringement carries a connotation of deliberate intent to deceive. Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard." *Id.* at 1406. Thus, although defendant Bic Pen intentionally used the term "Auditor's" despite knowing that Lindy Pen had registered the term as its own trademark fourteen years earlier, *id.* at 1403, we held that the action "simply d[id] not involve willful infringement." *Id.* at 1406. Among other factors, the Lindy Pen "mark was weak and . . . there was no evidence of actual confusion." *Id.*

We have not departed from the *Lindy Pen* explication of the term "willful" as including a component of deceit or bad faith.[1] In *Intel Corp. v. Terabyte Int'l, Inc.,* 6 F.3d 614 (9th Cir.1993), we held

---

1. Thus, the majority's assertion that "Bumper's claims of good faith are unavailing. The issue is not necessarily one of bad faith: willful or deliberate infringement will suffice," is confused.

that a record showing that Terabyte had known that the chips it purchased were counterfeit was sufficient to "support ... a determination that Terabyte acted deliberately and willfully." *Id.* at 622. In *Comm. for Idaho's High Desert, Inc. v. Yost,* 92 F.3d 814 (9th Cir.1996), we permitted an award of attorney's fees because the appellants had used the appellee's name to "obstruct [the appellee's] pursuit of its environmental agenda." *Id.* at 825. Then, in *Stephen W. Boney, Inc. v. Boney Servs., Inc.,* 127 F.3d 821 (9th Cir.1997), we recognized that "the standard articulated in *Lindy Pen* and *Committee for Idaho's High Desert,* under which bad faith or other malicious conduct satisfies the exceptional circumstances requirement," had been extended to "both prevailing plaintiffs and prevailing defendants seeking attorney's fees under the Lanham Act." *Id.* at 827.[2] More recently, we upheld a jury finding of "willful infringement" of a trademark (used by the District Court as the basis of an attorney's fees award) because the jury had been "properly instructed as to the bad faith component of willfulness." *Gracie v. Gracie,* 217 F.3d 1060, 1068–69 (9th Cir.2000).[3]

In this case, prior extensive findings regarding the strength of the plaintiff's

mark[4] and the likelihood of confusion permitted the District Court to award attorney's fees to the plaintiff. The factors constituting the well-established test for likelihood of confusion are set forth in *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir.1979).[5] The plaintiff's trademark in this case was held to be a strong one, and the likelihood of confusion was correspondingly found to be high. Consequently, the defendant's behavior in this controversy went beyond the intentional challenge of a weak mark that occurred in *Lindy Pen.* The bad faith or deceitfulness component of "willful" was met here, making this an exceptional case and permitting an award of attorney's fees at the District Court's discretion.

Although the defendant's actions in this case "r[o]se to. the level of willfulness," *Lindy Pen,* 982 F.2d at 1406, this will not be true in every trademark challenge. In order to determine whether or not a competitor's act of infringement is "willful," rather than merely voluntary or intentional, district courts must consider the factors listed in the *AMF* test. Otherwise, parties such as the trademark challenger in *Lindy Pen* may be punished by attorney's fees

2. In *Boney,* we also speculated that "other exceptional circumstances" aside · from bad faith "may warrant a fee award" without discussing what those circumstances might be. *Id.* However, this speculation as to what *else* might make a case "exceptional" has no bearing on the fact that we have continuously defined "willful" as having a component of deceitfulness or bad faith.

3. On this basis, we distinguished *Gracie* from *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.,* 951 F.2d 684 (5th Cir.1992) (reversing a fee award because the jury instructions defined "willfully" as merely "done voluntarily and intentionally").

4. The strength of a mark is determined through the "imagination test," in which a

court "asks how much imagination a consumer must use to associate a given mark with the goods or services it identifies ... [t]he more imagination required, the stronger the mark is"; and the "need test," which "asks to what extent a mark is actually needed by competitors to identify their goods or services." *Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.,* 856 F.2d 1445, 1449 (9th Cir.1988).

5. Those factors include: (1) strength of the mark, (2) proximity of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) type of goods and degree of care likely to be exercised by the purchaser, (7) defendant's intent in selecting the mark, and (8) likelihood of expansion of product lines. *Id.* at 348–49.

awards for exercising their right to challenge weak trademarks.