**WORLD TRIATHALON CORPORATION, a Florida Corporation, Plaintiff,**

v.

**John DUNBAR; Ian Emberson; Henry Forrest; Gordon Haller; Archie Hapai and Ralph Yawata, individually and collectively d/b/a/ Hawaiian Ironman Triathalon Organizing Committee, Defendants.**

**Civil No. 05–00351 JMS/KSC.**

United States District Court, D. Hawai'i.

March 19, 2008.

Frank R. Jakes, Johnson Blakely Pope Bokor Ruppel & Burns, Tampa, FL, Phillip A. Li, Li & Tsukazaki, Honolulu, HI, for Plaintiff.

Ira Dennis Hawver, Law Office of Dennis Hawver, Ozawkie, KS, for Defendants.

Gordon Haller, Centennial, CO, pro se.

*ORDER ADOPTING THE SPECIAL MASTER'S REPORTS, DATED JANUARY 29, 2008 AND FEBRUARY 5, 2008*

J. MICHAEL SEABRIGHT, District Judge.

## I. INTRODUCTION

On January 29, 2008, Magistrate Judge Kevin S.C. Chang issued a Special Master's Report Recommending that Plaintiff's Renewed Motion for Attorneys' Fees Be Granted in Part and Denied in Part ("Special Master's Report").[1] Specifically, the Special Master's Report recommends that Plaintiff World Triathalon Corporation ("WTC" or "Plaintiff") be awarded its attorneys' fees and costs in the amount of $161,147.05 because (1) Plaintiff is a prevailing party in this trademark infringement action, and (2) Defendants John Dunbar, Archie Hapai, and Hawaiian Ironman Triathalon Organizing Committee ("HITOC") (collectively "Defendants"), deliberately and willfully infringed Plaintiff's Ironman trademarks, making this an exceptional case meriting the award of attor-

neys' fees pursuant to 15 U.S.C. § 1117(a). Defendants timely objected to the Special Master's Report, and argue that this is not an "exceptional case" meriting an award of attorneys' fees. For the following reasons, the court ADOPTS the Special Master's Report.

## II. BACKGROUND

### A. Factual Background

The court provides the following condensed facts as outlined from its October 18, 2005 Order Granting Plaintiff's Motion for Preliminary Injunction:

The individually-named Defendants were part of HITOC, which started, sponsored, and participated in the original Ironman triathlon in 1978. In 1980, Valerie Silk and her husband Henry Grundman agreed to take over the race and incorporated Hawaiian Triathlon Corporation ("HTC"). Silk and Grundman moved the race from Oahu to Kailua–Kona in 1981 and began to secure federal registrations for the Ironman trademarks as early as November 22, 1983. Plaintiff purchased HTC in 1989.

Over the past twenty-seven years, the race has grown to become a prominent event, and Plaintiff and its licensees sell a wide array of products featuring the Ironman mark. At the time the Complaint in this action was filed, Plaintiff owned thirty-six federal trademark registrations and 118 foreign trademark registrations for marks relating to the Ironman.

In 1989, Dunbar and several other members of the HITOC—that is, several of the participants in the original Ironman race—

---

1. The Special Master's Report recommended that this court award Plaintiff a total of $161,590.95 in fees and costs, subject to verification of Plaintiff's costs through submission of a subsequent declaration with receipts. Doc. No. 172. Because Plaintiff was unable to verify the total amount of its costs, the Special Master amended his Report on February 5, 2008 to recommend that the court award Plaintiff a total of $161,147.05 in fees and costs. Doc. No. 174. The court refers to these two Reports collectively as the "Special Master's Report."

sued HTC and Silk in the First Circuit Court of the State of Hawaii. *Gordon W. Haller, et al. v. Haw. Triathlon Corp., et al.,* Civil No. 89–3623 (Haw.Cir.Ct.1993) ("*Haller*"). The *Haller* plaintiffs asked, among other things, that the circuit court enter a preliminary injunction to prevent the sale of HTC (run by Silk) to WTC (Plaintiff in the instant case). The *Haller* plaintiffs argued that they owned the Ironman and that any prior assignment of rights to the Ironman should be set aside as fraudulent. In 1992, the *Haller* plaintiffs filed a first amended complaint including further allegations of fraud and unjust enrichment.

In 1993, the circuit court granted summary judgment in favor of the *Haller* defendants. The circuit court determined that the six-year statute of limitations set forth in Hawaii Revised Statutes ("HRS") § 657–1(4) barred the *Haller* plaintiffs' suit; the circuit court concluded that the *Haller* plaintiffs should have known of their claims in 1980 when the race was transferred to Silk and Grundman, making their 1989 suit untimely.[2]

Despite the *Haller* decision, Dunbar organized an Ironman-length triathlon on Maui from 1994 to 1998, sold Ironman trophies through sports catalogs and at the Ironman race itself, registered two trademarks and a service mark for "Ironman Triathlon" with the Hawaii Department of Commerce and Consumer Affairs ("DCCA"), and contacted Plaintiff's licen-

sees, informing those companies that he owns the rights relating to the Ironman.

## B. Procedural Background

On May 25, 2005, Plaintiff filed a Complaint, alleging violation of the Lanham Act, violation of HRS Chapter 481A, common law unfair competition, tortious interference with business relations, slander of title, and seeking declaratory relief.[3]

On April 6, 2006, 2006 WL 897586, the court granted in part and denied in part Plaintiff's Motion for Partial Summary Judgment ("April 6, 2006 Order"). Specifically, the court granted Plaintiff's Motion for Summary Judgment as to its Lanham Act, HRS chapter 481A, and common law unfair competition claims.[4] Due in large part to *Haller*, the court found that Defendants had set forth no valid defenses, and had known since at least 1993 that they had no ownership rights in the Ironman marks. The court further granted Plaintiff's request for declaratory relief that "WTC has superior and exclusive rights to the Ironman marks and the Defendants have no ownership or other rights in the Ironman marks." *Id.* at 27.

On October 15, 2007, the court approved an Amended Stipulation by the Remaining Parties to Dismiss All Remaining Claims, and on October 30, 2007, entered a Final Judgment and Permanent Injunction against Defendants.[5] On November 9, 2007, Plaintiff filed a Motion for Attorneys' Fees.[6] On December 3, 2007, Defendants

---

**2.** It appears that the *Haller* plaintiffs did not appeal the circuit court's decision.

**3.** The original Complaint was brought against Defendant Dunbar individually and d/b/a/ HITOC. On November 3, 2005, Plaintiff filed a First Amended Complaint, adding Ian Emberson, Henry Forrest, Gordon Haller, Archie Hapai, and Ralph Yawata as Defendants. WTC subsequently settled its claims against Emberson, Forrest, Yawata, and Haller. Consequently, the court's reference to "Defendants" throughout this Order refers collec-

tively to remaining Defendants Dunbar and Hapai, individually and d/b/a HITOC.

**4.** The court denied Plaintiff's request for an order requiring the Director of DCCA to cancel Defendants' state registrations.

**5.** On November 29, 2007, Defendants filed a notice of appeal.

**6.** Plaintiff had previously submitted several motions for attorneys' fees, which were denied as premature and/or failing to comply

filed a Response, and on December 13, 2007, Plaintiff filed a Reply.[7]

On January 29, 2008, Magistrate Judge Chang submitted his Special Master's Report, finding that (1) this was an exceptional case warranting sanctions, and (2) Plaintiff should be awarded its reasonable attorneys' fees in the amount of $161,147.05. Defendants timely objected,[8] and Plaintiff filed a Response on March 5, 2008.

## III. STANDARD OF REVIEW

In acting on a special master's report, the district court must afford an opportunity to be heard and may receive evidence. Fed.R.Civ.P. 53(f)(1). The district court may "adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." *Id.* With an irrelevant exception, the district court must decide de novo all objections to find-ings of fact and/or conclusions of law made or recommended by the special master. Fed.R.Civ.P. 53(f)(3) & (4); *see also Summers v. Howard Univ.*, 374 F.3d 1188, 1195 n. 6 (D.C.Cir.2004) (noting that Fed. R.Civ.P. 53 was amended in 2003 to provide for de novo review of a special master's fact findings by the district court).

## IV. DISCUSSION

In a trademark infringement action, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "Exceptional cases include cases in which the infringement is malicious, fraudulent, deliberate, or willful."[9] *Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036, 1042 (9th Cir.2003) (*citing Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir.2000)); *Watec Co. v. Liu*, 403 F.3d 645, 656 (9th Cir.2005) ("A trademark case is exceptional where the

---

with the Local Rules. *See* Doc. Nos. 123, 132, & 154.

7. The Special Master also allowed supplemental briefing to address whether the Lanham Act and non-Lanham Act claims were so intertwined that it is impossible to differentiate between work done on each claim, and whether Plaintiff's block-billing required a reduction in the fee award. Defendants do not object to the Special Master's determination of either of these issues, or the calculation of attorneys' fees in general.

8. On February 10, 2008, Defendants filed a "First Motion for Reconsideration of Report of Special Master that Plaintiff's Renewed Motion for Attorneys' Fees Be Granted in Part and Denied in Part," Doc. No. 175, and on February 11, 2008 filed a "First Amended Motion for Reconsideration." Doc. No. 177. On February 12, 2008, the court issued an order stating that the Local Rules do not provide for a motion for reconsideration on a special master's report. The court further required Defendants to either: (1) withdraw the Motion for Reconsideration; (2) request the court to treat the Motion for Reconsideration as an objection to the Special Master's Report; or (3) request that the court treat the Motion for Reconsideration as an objection to the Special Master's Report and file a supplemental pleading setting forth any additional objections. Doc. No. 178. Contrary to this Order, on February 25, 2008, Defendants filed a "Supplement in Opposition to Report of Special Master that Plaintiff's Renewed Motion for Attorneys' Fees Be Granted in Part and Denied in Part." Doc. No. 180. The court treats and refers to Defendants' three filings collectively as "Defendants' Objection to the Special Master's Report" or "Defendants' Objection." Due to the multiple submissions by the parties on this issue, the court cites to each submission by referring to its Docket Number.

9. Defendants urge the court to use a standard that requires a finding of bad faith. Doc. No. 180, 13. No such finding is required. *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1218 (9th Cir.2003), explained that "[t]he issue is not necessarily one of bad faith: willful or deliberate infringement will suffice." As discussed below, the facts establish that Defendants did not merely use Plaintiff's trademark, but rather used Plaintiff's marks with knowledge that they had no rights to them.

district court finds that the defendant acted maliciously, fraudulently, deliberately, or willfully.") (*citing Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216 (9th Cir.2003)).

■ Based on a review of the entire record, the court finds that the facts presented here show that Defendants deliberately infringed Plaintiff's Ironman marks, warranting an award of attorneys' fees. As an initial matter, Defendants' infringement was not a close case. In granting Plaintiff's Motion for Summary Judgment on its Lanham Act claim, the court found that there was no genuine issue of material fact that Plaintiff owns the Ironman marks, that these marks are incontestible, and that Defendants' actions create a likelihood of confusion. April 6, 2006 Order, 5. Indeed, Defendants used an identical mark and advertised trophies with this mark in the very same publication that Plaintiff used to advertise its events. *Id.* at 17.

Further, the history of the parties shows that Defendants knew that they had no right to use Plaintiff's marks. In 1989, Defendants sued Plaintiff's predecessor in Hawaii circuit court to prevent the sale of HTC to WTC, in part based on the assertion that they owned rights relating to the Ironman. In 1993, the circuit court granted summary judgment in favor of the *Haller* defendants (*i.e.*, Plaintiffs in this action) because the statute of limitations had run—the *Haller* plaintiffs (*i.e.*, Defendants in this action) should have known of their claims in 1980 when the race was transferred to HTC. In other words, Defendants' legal action seeking rights relating to the Ironman failed. Because of *Haller*, Defendants have known since at least 1993 that they have no ownership rights in the Ironman race or any related trademarks. April 6, 2006 Order, 18. Despite this knowledge, Defendants later (1) organized an Ironman-length triathlon on Maui from 1994 to 1998; (2) sold Ironman trophies

through sports catalogs and at the Ironman race itself; (3) registered two trademarks and a service mark for "Ironman Triathlon" with the Hawaii DCCA; and (4) contacted Plaintiff's licensees, informing those companies that they, not Plaintiff, own the rights to the Ironman.

None of Defendants' arguments persuades the court that Defendants did not deliberately infringe Plaintiff's trademarks. Before the Special Master, Defendants argued that they (1) believed that they owned the Ironman event and mark given their creation of the event, Doc No. 162, 1; (2) believed that the issue of who owned the Ironman mark had not been determined by the *Haller* case, based on an opinion of counsel, *id.* at 6; (3) did not exactly duplicate Plaintiff's trademark, *id.* at 4; and (4) had a factual basis for their defenses. *Id.* at 5. Each of these arguments is either meritless in light of *Haller*, and/or unsubstantiated by facts.

First, Defendants' argument that they acted on a good faith belief that they owned the Ironman event cannot be sustained due to *Haller*. Defendants attempted through *Haller* to establish ownership of the Ironman event, and lost. After *Haller*, Defendants had no basis for believing they had any ownership rights in the Ironman.

Nor have Defendants established any good faith belief of non-infringement on the basis that they relied on an opinion of counsel. The court recognizes that in some instances, a good faith belief of non-infringement can be shown through the fact that a defendant made adequate disclosure to legal counsel, received that counsel's advice, and acted upon that advice. *See Earthquake Sound Corp.*, 352 F.3d at 1218 (finding that Defendant "did not establish that it took reasonable measures, such as consulting an attorney, to investigate possible infringement liability"); *Cuisinarts, Inc. v. Robot–Coupe Int'l*

*Corp.*, 580 F.Supp. 634, 638 (S.D.N.Y.1984) ("But if a client seeks qualified counsel's advice in a timely manner, makes adequate disclosure to counsel, receives counsel's opinion and then acts upon it, surely the Chancellor must pause before branding the client as a wilful, deliberate, fraudulent commercial thief. . . ."). Defendants, however, have not come forward with any opinion of counsel concerning the Ironman trademarks. Instead, Defendants point to a letter sent to counsel for the *Haller* defendants stating that "[o]ur legal consultants and researchers in this case have advised us that [the *Haller* decision] . . . does not adjudicate or address the substantive issue of ownership of the Ironman event or any rights therein." Defs.' Resp. to Pl.'s Mot. for Attorneys' Fees, Ex. 1. This letter is not an opinion of counsel addressing Defendants' potential infringement liability, and does not indicate that Defendants received and relied on such advice.[10] As such, the court does not infer that Defendants acted reasonably from this letter.

The court also rejects Defendants' argument that their infringement was not deliberate because there are differences between Plaintiff's Ironman mark and Defendants' use of the word.[11] The April 6, 2006 Order explains that Defendants were using an identical mark to take commercial advantage of Plaintiff's trademarks:

> WTC's Ironman mark is well-known, and the Defendants are using an identical mark. Dunbar advertised his trophies in the same publications used by WTC to advertise its events, and he chose this mark because he believed he owns the event (*i.e.*, he chose this mark knowing that another entity was using the identical mark). Although the evidence of Hapai's infringement is more limited, there is uncontroverted evidence that Hapai has infringed on the Plaintiff's trademarks by selling or receiving t-shirts with the Ironman logo on them. In short, Dunbar and Hapai are attempting to take commercial advantage of WTC's trademarks.

April 6, 2006 Order, 17.

The court further rejects Defendants' argument that their defenses to infringement, while ultimately rejected by the court, nonetheless show a good faith belief of non-infringement. In viewing all of the evidence in a light most favorable to them, Defendants failed to raise a genuine issue of material fact in support of any of their defenses. On their senior rights defense (which requires a showing of continuous use), Defendants "utterly failed" to meet their burden and produced evidence of only "sporadic use" of the Ironman mark since 1980. *Id.* at 11–12. In rejecting Defendants' laches argument, the April 6, 2006 Order explained that:

> The Defendants have known, since at least 1993, that they have no ownership rights in the Ironman trademarks. The Defendants knew that the Plaintiff continued to use the trademarks commer-

---

10. This letter does not identify the attorneys who advised Defendants, or the basis for their opinion that the *Haller* decision did not adjudicate or address ownership of the Ironman and/or related marks. Further, despite this "opinion," the facts of this case show that Defendants knew that Plaintiff had registered and used the Ironman marks, and could not have believed that they were entitled to them.

11. Defendants compare only one of their uses of the word Ironman ("Maui Ironman")

with only one of Plaintiff's logo-marks. Plaintiff owns at least thirty-six federal trademark registrations relating to the Ironman and Defendants' use of the Ironman mark was not limited to the Maui Ironman. Further, Defendants' argument is belied by their own assertion that they "openly admit, even loudly and explicitly assert that they use the IRONMAN and IRONMAN Triathalon marks . . . ." Defs.' Answer, Doc. No. 15, ¶ 35.

cially. The Defendants have used the Plaintiff's trademarks only sporadically since 1993: Dunbar advertised trophies for sale in 1983 and 1989; he organized an Ironman-length triathlon in the mid-1990s; and he and Hapai sold some t-shirts in 2003 and 2004. The Plaintiff's decision to forego court action until 2005 was not unreasonable, given that the Defendants often went years at a time without engaging in any infringing activity.... When the Defendants increased their level of infringement in 2003 and 2004—Dunbar filed two applications to register Ironman Triathlon trademarks with the Hawaii Department of Commerce and Consumer Affairs (DCCA) in December 2003, and Dunbar and Hapai sold t-shirts in 2003 and 2004—WTC took legal action.

*Id.* at 18–19. After Defendants stepped up their acts of infringement, Defendants were well in their rights to bring suit.

Beyond the arguments addressed above, Defendants raise several entirely new arguments not raised before the Special Master. Specifically, Defendants argue that: (1) Defendants' use of the generic word "Ironman" and Plaintiff's Ironman mark are incapable of being confused, Doc. No. 177, 3 & 8; Doc. No. 180, 1–11; (2) the court did not fairly address the genericness of "Ironman," Doc. No. 180, 15; (3)

Plaintiff's Ironman mark is not incontestible, *id.* at 16–17; (4) Defendants have a defense of fair use, Doc. No. 177, 4–5;[12] and (5) the equities weigh against an award of fees and costs due to Defendants' limited infringement and the fact that Defendants created the sport. *Id.* at 9.

■ *Other than Defendants' last argument on the equities, Defendants' arguments are directed to non-infringement as opposed to the issue presented here—whether this is an exceptional case warranting attorneys' fees.* The court will not, and cannot, revisit the infringement determination. The April 6, 2006 Order granted summary judgment to Plaintiff on its Lanham Act claim, and Defendants have since appealed to the Ninth Circuit. Defendants' filing of a notice of appeal divested this court of jurisdiction over those aspects involved in the appeal—*i.e.,* whether Defendants infringed Plaintiff's trademarks. *See Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58–59, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). Accordingly, the court does not have jurisdiction to hear Defendants' arguments on non-infringement.[13]

---

**12.** Of these first four arguments, the only argument Defendants previously raised before this court was the incontestibility of Plaintiff's marks.

**13.** Further, to the extent any of these arguments could be construed as arguing that this is not an exceptional case, Defendants did not raise these arguments before the Special Master (or, for the most part, even on summary judgment). Defendants cannot raise entirely new arguments for the first time on an objection to a Special Master's Report. *See Convolve, Inc. v. Compaq Computer Corp.,* 2004 WL 1944834, at *1 (S.D.N.Y. Sept. 1, 2004) ("The new arguments now advanced by Convolve come too late because they could have

been raised to the Special Master but were not."); *Nilssen v. Motorola, Inc.,* 2002 WL 206007, at *11 (N.D.Ill. Feb. 8, 2002) ("The proper time for Nilssen to assert arguments and allegations in opposition to Motorola's Motion for Summary Judgment was in his response to Motorola's motion, not during his objections to the findings of the Special Master, long after the motions have been fully briefed and filed."); *see also United States v. Howell,* 231 F.3d 615, 621 (9th Cir.2000) ("We conclude that a district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation."). To hold otherwise would re-open this

The court does, however, consider and reject Defendants' argument that as a matter of equity, attorneys' fees are not warranted because Defendants' infringement, if any, was minimal. The court recognizes that an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a) is " 'never automatic and may be limited by equitable considerations.' " *Perfumebay.com Inc. v. EBAY, Inc.*, 506 F.3d 1165, 1178 (9th Cir. 2007) (*quoting Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 711 (9th Cir. 1999)). However, the equities do not weigh in favor of Defendants. The mere fact of limited sales and/or use "does not require a finding that the infringement was not willful and deliberate." *Earthquake Sound Corp.*, 352 F.3d at 1218. Further, Defendant's acts were not limited to selling a few trophies and shirts. Rather, Defendants also registered Ironman trademarks with the DCCA and contacted Plaintiff's licensees claiming to be the true owners of the Ironman. No later than 1993, Defendants knew that they had no ownership rights, and had no basis for believing they could use the Ironman marks. Defendants deliberately infringed Plaintiff's trademarks, warranting attorneys' fees.

### V. CONCLUSION

For the reasons stated above, the court ADOPTS the Special Master's Report awarding Plaintiff's attorneys' fees in the amount of $161,147.05.

IT IS SO ORDERED.

*REPORT OF SPECIAL MASTER RECOMMENDING THAT PLAINTIFF'S RENEWED MOTION FOR ATTORNEY'S FEES BE GRANTED IN PART AND DENIED IN PART*

KEVIN S.C. CHANG, United States Magistrate Judge.

Before the Court is Plaintiff World Triathlon Corporation's ("Plaintiff") Renewed Motion for Attorneys' Fees ("Motion"), filed November 9, 2007. On November 21, 2007, Plaintiff filed a Statement of Consultation. On December 3, 2007, Defendants John Dunbar and Hawaiian Ironman Triathlon Organizing Committee (collectively "Defendants") filed their Opposition. Plaintiff filed a Reply on. December 13, 2007. Per the Court's request, Plaintiff submitted a Supplemental Memorandum on January 10, 2008 and Defendants filed their response on January 17, 2008. On January 28, 2008, Plaintiff filed a Reply. Plaintiff requests $200,769.50 [1] in attorneys' fees and $18,313.83 costs.

The Court finds this matter suitable for disposition without a hearing pursuant to Local Rule 7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawaii ("Local Rules"). After reviewing the Motion, the supporting, opposing, and supplemental memoranda, and the relevant case law, the Court FINDS and RECOMMENDS that the Motion be GRANTED IN PART and DENIED IN PART and recommends that the district court award Plaintiff $147,504.08 in attorneys' fees and $14,086.87 in costs, for a total of $161,590.95.

### BACKGROUND

The instant action arises out of Defendants' use of Plaintiff's Ironman and Iron-

---

case to full litigation on the merits—an impermissible result.

1. Plaintiff asks for $200,272.75, but its billing statements total $200,769.50.

man Triathlon marks. On May 25, 2005, Plaintiff filed its Complaint, alleging violation of the Lanham Act (Count I); violation of Hawaii Revised Statutes ("HRS") Chapter 481A (Count II); common law unfair competition (Count III); tortious interference with business relations (Count IV); and slander of title (Count V). Plaintiff also sought declaratory relief (Count VI).

On July 29, 2005, Defendant John Dunbar, individually and dba Hawaiian Ironman Triathlon Organizing Committee ("HITOC"), filed an Answer and raised counterclaims against Plaintiff pursuant to HRS Chapter 481A and common law unfair competition. Plaintiff filed a First Amended Complaint on November 3, 2005, adding Ian Emberson, Hentry Forrest, Gordon Haller, Archie Hapai and Ralph Yawata as defendants.

On April 6, 2006, United States District Judge J. Michael Seabright issued an Order Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment ("SJ Order"). He granted summary judgment in Plaintiff's favor with respect to Counts I, II, III, and VI of the First Amended Complaint. In addition, he granted summary judgment in Plaintiff's favor regarding Defendants' HRS Chapter 481A counterclaim. However, the Court denied Plaintiff's request for an order requiring the Director of the Hawaii Department of Commerce and Consumer Affairs to cancel Defendants' state registrations.

Plaintiff filed three previous motions for attorneys' fees and costs, each of which the Court denied without prejudice for noncompliance with the rules and/or as premature.

On October 15, 2007, Judge Seabright approved a stipulation between the parties to dismiss all remaining claims (Counts IV and V of the First Amended Complaint and Defendants' counterclaims). On October 30, 2007, Judge Seabright entered a Final Judgment and Permanent Injunction, wherein he directed Plaintiff to submit a renewed motion for attorneys' fees within ten days of the entry of final judgment. Plaintiffs subsequently filed the instant Motion.

## DISCUSSION

### I. Attorneys' Fees

#### A. Entitlement to Attorneys' Fees

Plaintiff argues that it is entitled to attorneys' fees under 15 U.S.C. § 1117(a) because it is the prevailing party and this is an "exceptional" case, i.e. Defendants deliberately and willfully infringed Plaintiff's IRONMAN® Marks. To support its position, Plaintiff contends that Defendants admitted to using Plaintiff's mark and failed to provide a valid defense for the infringing use; that Defendants' use of the mark was in conscious disregard of the ruling in *Haller, et al. v. Hawaiian Triathlon Corp., et al.*, Civil No. 89–3623–11 (First Circuit Court, State of Hawaii); and Defendants fraudulently applied for three Hawaii State Trademark Registrations for IRONMAN TRIATHLON in the name of HITOC, despite the *Haller* decision and knowledge of Plaintiff's registrations for the IRONMAN® marks.

Defendants contend that their use of the IRONMAN® trademark did not rise to the level of willful or deliberate because they believed they owned the mark. Further, Defendants maintain that they presented valid, plausible defenses, even though Judge Seabright held that they did not satisfy their burden of proof. The Court disagrees.

Section 1117(a) of Title 15 of the United States Code provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117. In the Ninth Circuit, "exceptional" cases are those where the in-

fringement is "malicious, fraudulent, deliberate or willful." *Gracie v. Gracie,* 217 F.3d 1060, 1068 (9th Cir.2000); *Earthquake Sound Corp. v. Bumper Industries,* 352 F.3d 1210, 1216 (9th Cir.2003); *Horphag Research Ltd. v. Pellegrini,* 337 F.3d 1036, 1042 (9th Cir.2003).

The circumstances in the present case warrant an award of fees under § 1117(a). Defendants knew of the existence of Plaintiff's marks and deliberately infringed on said marks by using the marks to sell various products. *See* SJ Order at 17. Further, Judge Seabright determined that Defendants had no valid defenses for the infringement. *Id.* at 14–20. When taken together, these circumstances justify an award of fees. *See, e.g., Horphag,* 337 F.3d at 1040–42 (affirming district court's award of fees for infringement claim because infringement was willful and deliberate; that is, the defendant admitted to using the plaintiff's trademark and he did not present an adequate defense).

Moreover, Judge Seabright found that Defendants knew since at least 1993 that they had no ownership rights in the trademarks. *Id.* at 18. Indeed, the First Circuit Court, State of Hawaii determined in 1993 that any claims of ownership in the mark by Defendants were barred by the statute of limitations. *See Haller,* Civil No. 89–3623–11. Despite this ruling, Defendants continued to use the mark.

Regardless of whether Defendants actually believed they owned the mark, Judge Seabright determined that their actions constituted infringement. He also clearly indicated that their defenses were unsupported by the evidence and/or that the defenses were meritless.[2] The issues raised by Defendants have already been considered and rejected by Judge Seabright and are irrelevant for the purposes of this Motion.

Lastly, even after losing in the *Haller* case, Defendants applied for Hawaii State registrations for the IRONMAN® marks. There is little question that their use of the marks and subsequent registration of said marks, particularly after the *Haller* case, rises to the level of willful and deliberate infringement. Accordingly, this case is "exceptional" and an award of fees is appropriate.

■ Where, as here, a party prevails on both Lanham Act and non-Lanham Act claims, the Ninth Circuit has held that the recovery of attorneys' fees under § 1117(a) is limited to work related to the Lanham Act claims. *Gracie,* 217 F.3d at 1069. However, legal fees incurred in litigating non-Lanham Act claims may be recovered if "the Lanham Act claims and non-Lanham Act claims are so intertwined that it is *impossible to differentiate* between work done on claims." *Id.*

Notwithstanding this exception to the general rule, the district court has a duty to attempt to apportion the fees "unless the court finds the claims are so inextricably intertwined that even an estimated adjustment would be meaningless." *Id.* at 1070. Even where calculations of exact percentages are impossible, the district court must "make some attempt to adjust the fee award to reflect, even if imprecise-

2. Defendants attempt to distinguish this case from *Horphag.* In particular, they assert that the *Horphag* court found that the defendant there presented no plausible defense at all, and was intentionally attempting to confuse the public. Opp'n at 5. This is not the case. The *Horphag* court determined that 1) the defendant had infringed upon the plaintiff's mark because he used the mark in the meta-tags for his website and 2) the defendant did not present an adequate defense to infringement under the Lanham Act. *Horphag,* 337 F.3d at 1040–42. Similarly here, Defendants admit to using Plaintiff's mark and it has been determined that Defendants did not present an adequate defense to the infringement.

ly, work performed on non-Lanham Act claims." *Id.*

Plaintiff argues that in the instant case, the Lanham Act and non-Lanham Act claims are so intertwined that it is impossible to differentiate the work done on the claims. Although Defendants contest Plaintiff's entitlement to attorneys' fees, they concede that the claims are inseparable for the purposes of apportioning fees between the Lanham Act and non-Lanham Act claims. Having carefully reviewed the records, the Court finds that because the claims all arise out of the same facts and occurrences, it is impossible to differentiate between the work on specific claims and thus impossible to apportion the fees between the Lanham Act and non-Lanham Act claims. The Court shall now evaluate the reasonableness of the fees requested by Plaintiff.

### B. *Calculation of Fees*

Under federal law, reasonable attorneys' fees are generally based on the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). *See Fischer v. SJB–P.D., Inc.,* 214 F.3d 1115, 1119 (9th Cir.2000). The court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. Second, the court must decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), which have not already been subsumed in the lodestar cal-

culation. *See Fischer,* 214 F.3d at 1119 (citation omitted).

The factors the Ninth Circuit articulated in *Kerr* are:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr,* 526 F.2d at 70. Factors one through five have been subsumed in the lodestar calculation. *See Morales v. City of San Rafael,* 96 F.3d 359, 364 n. 9 (9th Cir.1996). Further, the Ninth Circuit, extending *City of Burlington v. Dague,* 505 U.S. 557, 567, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), held that the sixth factor, whether the fee is fixed or contingent may not be considered in the lodestar calculation. *See Davis v. City & County of San Francisco,* 976 F.2d 1536, 1549 (9th Cir.1992), *vacated in part on other grounds,* 984 F.2d 345 (9th Cir.1993). Once calculated, the "lodestar" is presumptively reasonable. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 728, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987); *see also Fischer,* 214 F.3d at 1119 n. 4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

Plaintiff requests the following attorneys' fees for work performed by its attorneys: [3]

---

**3.** Plaintiff's submissions contain calculation and typographical errors. The total amount of fees requested by Plaintiff set forth in the Court's summary differs from some of the calculations presented in the billing itemization. However, the Court has carefully re-

viewed and calculated the fees based on the time expended and counsel's hourly rates.

It should be noted that Exhibit D to Plaintiff's Supplemental Memorandum (billing itemization) contains time entries for an individual with the initials "JJW", even though

| ATTORNEY | HOURS | RATE | LODESTAR |
|---|---|---|---|
| Phillip Li | 222 | $250/$255 [4] | $55,545.00 |
| Laura Anderson | 0 | $190 | $0.00 |
| Ian Hlawati | 5 | $140 | $700.00 |
| Frank Jakes | 335.7 | $315–$375 [5] | $111,178.50 |
| Breton Permesly | 287.6 | $67.50–$160 [6] | $25,919.50 |
| | | | |
| PARALEGAL | | | |
| Dell Nakamura | 24 | $105/$110 [7] | $2,521.25 |
| Marlena Paracaules | 0.75 | $105 | $78.75 |
| Susan Wood | 0.50 | $145 | $72.50 |
| Lisa Herbst | 36.2 | $130 | $4,706.00 |
| Jennifer Yarnell | 0.40 | $120 | $48.00 |
| | | **TOTAL:** | **$200,769.50** |

The Court is now tasked with determining the reasonableness of the requested hourly rates and time expended.

### 1. Reasonable Hourly Rate

 In determining what is a reasonable hourly rate, the experience, skill, and reputation of the attorney requesting fees are taken into account. See Webb v. Ada County, 285 F.3d 829, 840 & n. 6 (9th Cir.2002). The reasonable hourly rate should reflect the prevailing market rates in the community. See id.; Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992), as amended on denial of reh'g, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district"). It is the burden of the fee applicant to produce satisfactory evidence, in addition to an affidavit from the fee applicant, demonstrating that the requested hourly rate reflects prevailing community rates for similar services. See Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir.1987).

Mr. Jakes has practiced law for 24 years. Jakes Decl. at ¶ 24. Mr. Permesly has practiced law for slightly over two

Mr. Jakes did not identify an individual with those initials in his Declaration. Thus, the Court will exclude those time entries. Further, Plaintiff is cautioned to more carefully review its submissions, as it frequently scrambled and/or misspelled the initials of the individuals who completed the work for specific time entries.

4. The $250 hourly rate applies to billings pre July 1, 2006. The $255 hourly rate applies to post July 1, 2006 billings. Amended Declaration of Phillip A. Li ("Li Decl.") at ¶ 9. Mr. Li expended 213 hours at the $250 rate and 9 hours at the $255 hourly rate.

5. Mr. Jakes indicates that his hourly rate ranged from $315.00–$350.00 in 2005 and $337.50–$375.00 in 2006. Pl.'s Mot., Declaration of Frank R. Jakes ("Jakes Decl.") at ¶ 17. In the future, it would greatly assist the Court if counsel would indicate what particular billing rate applies to specific time entries, especially because several billing rates apply.

To verify the calculations, the Court had to ascertain this information independently for each and every time entry, which resulted in the following breakdown: 234.4 hours at $315; 0.4 hours at $337.50; 25.2 hours at $350; and 75.7 hours at $375.

6. Although Mr. Jakes represents that Mr. Permesly's hourly rate was $67.50 in 2005 and $160 in 2006, the billing itemization indicates that Mr. Permesly's hourly rate was $67.50, $135, $140, and $160. Compare id. with Pl.'s Supplemental Mem., Ex. D. The breakdown of Mr. Permesly's time is as follows: 209 hours at $67.50; 4 hours at $135; 33.2 hours at $140; and 41.4 hours at $160.

7. The $105 hourly rate applies to billings pre July 1, 2006. The $110 hourly rate applies to post July 1, 2006 billings. Li Decl. at ¶ 9. Mr. Nakamura expended 23.75 hours at the $105 hourly rate and 0.25 hours at the $110 hourly rate.

years. *Id.* at ¶ 18(a). Mr. Li has been licensed in Hawaii since 1986. Li Decl. at ¶ 9. Ms. Anderson was admitted to practice law in 1996. *Id.* at ¶ 10. Mr. Hlawati was admitted to the Hawaii bar in 2004. *Id.* at ¶ 10. Mr. Nakamura, Ms. Paracaules,[8] Ms. Wood, Ms. Herbst, and Ms. Yarnell, all paralegals, have the following years of respective experience: 22 years; 10 years; 21+ years; 10 years;[9] and 8 years. *See* Jakes Decl. at ¶ 18(b)-(d); Li Decl. at ¶¶ 12–13.

■■■ This Court is well aware of the prevailing rates in the community for similar services performed by attorneys and paralegals of comparable experience, skill and reputation. Based on this Court's knowledge of the community's prevailing rates, the hourly rates generally granted by the Court, the Court's familiarity with this case, and the attorneys' submissions, this Court finds that Mr. Permesly's requested hourly rate of $67.50 for work completed prior to his admission to the Florida Bar is manifestly reasonable. However, the Court finds that the hourly rate requested by Mr. Permesly following his admission to the Florida Bar, as well as the hourly rates requested by the other attorneys and paralegals exceed this community's prevailing rates. Accordingly the Court hereby adjusts their hourly rates and finds that the following are reasonable: Mr. Li—$220; Mr. Hlawati—$120; Mr. Jakes—$285; Mr. Permesly—$130; Mr. Nakamura—$85; Ms. Paracaules—$85; Ms. Wood—$85; Ms. Herbst—$110; and Ms. Yarnell—$85.

### 2. *Hours Reasonably Expended*

■■■ Beyond establishing a reasonable hourly rate, a prevailing party seeking attorneys' fees bears the burden of proving that the fees and costs taxed are associated with the relief requested and are reasonably necessary to achieve the results obtained. *See Tirona v. State Farm Mut. Auto. Ins. Co.,* 821 F.Supp. 632, 636 (D.Haw.1993) (citations omitted). The court must guard against awarding fees and costs which are excessive, and must determine which fees and costs were self-imposed and avoidable. *See Tirona,* 821 F.Supp. at 637 (citing *INVST Fin. Group v. Chem–Nuclear Sys.,* 815 F.2d 391, 404 (6th Cir.1987), *cert. denied,* 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987)). This Court has "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." *Soler v. G & U, Inc.,* 801 F.Supp. 1056, 1060 (S.D.N.Y.1992) (citation omitted). Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated. *See Gates,* 987 F.2d at 1399 (quoting *Hensley,* 461 U.S. at 433–34, 103 S.Ct. 1933).

After carefully reviewing Plaintiff's time submissions, the Court finds that reductions are appropriate due to block billing, inadequate time entries, and billings in quarter-hour increments.[10] This is especially true with respect to the requested hours that are recorded in the "block billing" style. "The term 'block billing' refers to the time-keeping method by which each lawyer and legal assistant enters the total

---

**8.** The Court is unclear about the correct name of this individual. Mr. Li indicated in paragraph 8 of his declaration that her last name was Paracaules, but later identified her as Marlena Palmero. *See* Li Decl. at ¶ 13.

**9.** In addition, Ms. Herbst previously practiced law and is an inactive member of the Florida, Virginia and DC Bars. Jakes Dec. at ¶ 18(c).

**10.** Plaintiff's counsel has represented that the fees requested in this Motion are already discounted. Although the Court appreciates Plaintiff's efforts to pare down its requested fees, the Court must nevertheless make reductions it deems necessary based on the parties' submissions.

daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Robinson v. City of Edmond,* 160 F.3d 1275, 1284 n. 9 (10th Cir.1998) (citations and quotation marks omitted). Block billing entries generally fail to specify a breakdown of the time spent on each task.

District courts have the authority to reduce hours that are billed in block format because such a billing style makes it difficult for courts to ascertain how much time counsel expended on specified tasks. *Welch v. Metropolitan Life Ins. Co.,* 480 F.3d 942, 948 (9th Cir.2007). *See also id.* (citing *Role Models Am., Inc. v. Brownlee,* 353 F.3d 962, 971 (D.C.Cir.2004) (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness"); *see also Hensley,* 461 U.S. at 437, 103 S.Ct. 1933 (holding that applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims")). Indeed, it is a challenge to determine the reasonableness of a time entry when it includes several tasks.

 Although Plaintiff is not entirely opposed to a reduction in the fee award due to block billing issues, it contends that its billing information does not constitute block billing because the cumulative time entries are delineated by day, not by weeks or months. The Court is not persuaded. The majority of counsel's billings constitute the practice of block billing, as there are multiple tasks listed for single time entries, which makes it difficult, if not impossible, for the Court to determine the reasonableness of the hours expended. Accordingly, an across-the-board reduction of 15% appropriate.

This reduction is further justified because of counsel's heavily redacted entries. *See* Local Rule 54.3(d)2. ("If the time descriptions are incomplete, or if such descriptions fail to describe adequately the services rendered, the court may reduce the award accordingly."). For example, many of the entries for telephone conferences and correspondence are redacted so that there is no indication of the subject of the communication. Likewise, many of the research entries are redacted so that there is no indication of the topic. Mr. Li stated that the redactions were necessary to prevent disclosure of attorney-client privilege or work product material. *See* Pl.'s Supplemental Mem., Li Decl. at ¶¶ 5–6. However, counsel could have included, and did in other entries, more information about the work performed without divulging attorney-client privilege or work product material.[11]

The Court expended a substantial amount of time reviewing the time entries. Although Mr. Li offered to provide the Court with a set of unredacted invoices for services rendered from both law firms, such invoices would not aid the Court. The billing summaries, not the invoices, are the primary submissions upon which the Court relies. If counsel were to submit the unredacted invoices, the Court would still have to compare the redacted billing summaries with the invoices, which would require countless additional hours of review of information that counsel should have provided in the first place. Based on this Court's knowledge of what is required to litigate cases similar to this one, this Court is able to make an estimation of the number of hours reasonably expended based on the redacted submissions.

---

**11.** For example, a description of a telephone conference with a client could state "regarding settlement offer," or "regarding discovery requests". Plaintiff's counsel would not have to divulge attorney-client privileged material by disclosing general subject matter versus specific points of discussion.

Even though Plaintiff's counsel block-billed all but a few entries, the Court will only apply the reduction to the block-billed entries. Thus, the Court will first identify the hours reasonably expended by counsel.

In reviewing Plaintiff's extensive submissions, the Court concludes that the following hours were not block-billed: 22.3 hours for Mr. Jakes; 20.7 hours for Mr. Permesly;[12] 14.3 hours for Ms. Herbst; 0.5 hours for Ms. Wood; 31.75 hours for Mr. Li;[13] 13 hours for Mr. Nakamura;[14] 0.75 for Ms. Paracaules; and 1.75 hours for Mr. Hlawati. The Court will therefore exclude these hours from the 15% across-the-board reduction for block-billing.

An application of the 15% reduction to the remaining hours results in the following hours: 1) Mr. Jakes—266.39; 2) Mr. Permesly—168.385 ($67.50 hourly rate) and 58.48 ($130-$160 hourly rate); 3) Ms. Herbst—18.615; 4) Ms. Yarnell—0.34; 5) Mr. Li—158.525 ($250 hourly rate) and 3.1875 ($255 hourly rate); 6) Mr. Nakamura—9.1375 ($105 hourly rate) and 0.2125 ($110 hourly rate); and 7) Mr. Hlawati—2.7625.

■ In addition, the Court finds it necessary to further reduce the hours expended by Mr. Li, Mr. Nakamura, Mr. Hlawati, and Ms. Paracaules because these individuals billed in quarter-hour increments. The billing statements are replete with quarter-hour and half-hour entries for phone calls, communications with the Court, conferences, and communications with co-counsel, which likely took a fraction of the time billed. *See Welch,* 480 F.3d at 949 (affirming district court's 20% across-the-board reduction for quarter-hour billing where such billing resulted in a request for excessive hours, i.e. a minimum of 15 minutes billed for tasks that likely took a fraction of the time). Moreover, this billing practice likely resulted in requests for excessive hours with respect to the other billings because of the large fractional increments. Accordingly, the Court further reduces the foregoing individuals' hours by 10%.[15] The reduced hours are: 1) Mr. Li—166.5225 ($250 hourly rate) and 7.59375 ($255 hourly rate); 2) Mr. Nakamura—19.92375 ($105 hourly rate) and 0.19125 ($110 hourly rate); 3) Mr. Hlawati—4.06125; and 4) Ms. Paracaules—0.675.

In sum, the Court finds that the following hours were reasonably expended by counsel in this action: 1) Mr. Li—166.5225 ($250 hourly rate) and 7.59375 ($255 hourly rate); 2) Mr. Hlawati—4.06125; 3) Mr. Jakes—288.69; 4) Mr. Permesly 179.285 ($67.50 hourly rate) and 68.28 ($130–$160 hourly rate); 5) Mr. Nakamura—19.92375 ($105 hourly rate) and 0.19125 ($110 hourly rate; 6) Ms. Paracaules—0.675; 7) Ms. Wood—0.5; 8) Ms. Herbst—32.915; and 9) Ms. Yarnell—0.34.[16]

---

12. 10.9 hours were billed at the $67.50 hourly rate and 9.8 hours were billed at hourly rates ranging from $135–$160.

13. 26.5 hours were billed at the $250 hourly rate and 5.25 hours were billed at the $255 hourly rate.

14. These hours were billed at the $105 hourly rate.

15. The hours previously excluded from the 15% across-the-board reduction for block-billing are also reduced by 10% and are included in the reduced hour totals for quarter-hour billing.

16. The hours for Mr. Jakes, Mr. Permesly, and Ms. Herbst include the hours excluded from the block-billing reduction, as the Court finds that said hours were reasonably expended on their corresponding tasks. All of Ms. Wood's time entries were reasonable and were not in block format.

### 3. Total Fee Award

Based on the foregoing findings and reductions, the Court is satisfied that Plaintiff has established the appropriateness of the following attorneys' fees incurred in the present action:

| ATTORNEY | HOURS | RATE | LODESTAR |
|---|---|---|---|
| Phillip Li | 174.11625 | $220 | $38,305.58 |
| Ian Hlawati | 4.06125 | $120 | $487.35 |
| Frank Jakes | 288.68 | $285 | $82,273.80 |
| Breton Permesly | 179.285 | $67.50 | $12,101.74 |
| | 68.28 | $130 | $8,876.40 |
| PARALEGAL | | | |
| Dell Nakamura | 20.115 | $85 | $1709.78 |
| Marlena Paracaules | 0.675 | $85 | $57.38 |
| Susan Wood | 0.50 | $85 | $42.50 |
| Lisa Herbst | 32.915 | $110 | $3,620.65 |
| Jennifer Yarnell | 0.34 | $85 | $28.90 |
| | | **TOTAL:** | **$147,504.08** |

The Court declines to adjust this amount based on the *Kerr* factors and recommends that the district court award Plaintiff $147,504.08 in attorneys' fees.

## II. Costs

Plaintiff also request $18,313.83 in costs, pursuant to 28 U.S.C. § 1920 and 15 U.S.C. § 1117(a). *See* Pl.'s Mot., Exs. E & F.

### A. Statutory Authority for Costs

Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed.R.Civ.P. 54(d)(1). The Local Rules provide that "[t]he party entitled to costs shall be the prevailing party in whose favor judgment is entered, or shall be the party who prevails in connection with a motion listed in LR54.2(b)." Local Rule 54.2(a).

█ Courts have discretion to award costs pursuant to Rule 54(d). *See Yasui v. Maui Electric Co., Ltd.,* 78 F.Supp.2d 1124, 1126 (D.Haw.1999). The burden is on the losing party to demonstrate why costs should not be awarded. *Stanley v. Univ. of Southern California,* 178 F.3d 1069, 1079 (9th Cir.1999).

### 1. 28 U.S.C. § 1920

While courts have discretion to award costs pursuant to Rule 54(d), courts may only tax the costs specified in 28 U.S.C. § 1920. *See Yasui,* 78 F.Supp.2d at 1126 (citing *Alflex Corp. v. Underwriters Laboratories, Inc.,* 914 F.2d 175, 177 (9th Cir. 1990); *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441–42, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987)). Section 1920 enumerates the following costs:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of the title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920; *Yasui,* 78 F.Supp.2d at 1126.

2. *15 U.S.C. § 1117(a)*

The Lanham Act provides a further basis for an award of costs:

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover . . . *the costs of the action.*

15 U.S.C. § 1117(a) (emphasis added).

In this case, Defendants have not raised any specific objections to the costs requested by Plaintiff. Moreover, Plaintiff is the "prevailing party" in this action. The Court will therefore tax statutorily permitted costs in their favor.

B. *Entitlement to Taxable and Non–Taxable Costs*

The Court addresses each of the costs requested by Plaintiff in turn. As an initial matter, the Court notes that Plaintiff has not submitted any receipts to support the request for costs. The Court will nevertheless assess Plaintiff's entitlement to the requested costs. Any recommendation of an award of costs shall be subject to verification by way of a supplemental declaration with receipts attached.

1. *Fees for Service of Summons and Subpoena*

Plaintiff requests $1,015.00 in costs under § 1920(1). *See* Pl.'s Mot., Exs. E & F. Section 1920(1) allows for the taxation of the fees of the clerk and marshal. *See also* Local Rule 54.2(f)(1) ("Fees for the service of process and service of subpoenas by someone other than the marshal are allowable, to the extent they are reasonably required and actually incurred.").

"Filing fees are properly recoverable by a prevailing party under § 1920(1)." *Buffone v. Rosebud Restaurants, Inc.,* No. CIV A 05 C 5551, 2006 WL 3196931, *1 (N.D.Ill. Oct. 31, 2006).

■ After reviewing Plaintiff's requests, the Court finds that $713.00 is taxable. The Court declines to award the costs requested for the clerk of court filing fee from 9/27/05, as there is no document to which this cost relates. A review of the docket indicates that no filing fee was incurred on or around that date. Further, included in the above award is a filing fee incurred on 5/23/05. The Court also declines to tax $52.00 incurred for "Service & Mileage Complaint on Dunbar" dated 5/25/05. While service costs may be recovered, the Court is unclear about what is meant by mileage and without any way to apportion the costs, the Court is unable to properly tax said request. Accordingly, the Court finds that $713.00 is taxable under § 1920(1).

2. *Court Reporter Fees*

■ Plaintiff requests $5,487.25 in deposition and transcript costs. Pl.'s Mot., Exs. E & F. Section 1920(2) provides for the taxation of the "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case[.]" 28 U.S.C. § 1920(2). Although the costs requested by Plaintiff are generally taxable, Plaintiff's inadequate descriptions make it impossible to determine whether they were reasonable and necessarily obtained for use in the case. Thus, the Court reduces the costs by 20%, which results in a total of $4,389.80 in costs under § 1920(2).

3. *Fees and Disbursements for Printing and Witnesses*

Plaintiff requests $2,096.91 in various witness related fees including service

costs, airfare, deposition attendance fees, and mileage. Pl.'s Mot., Exs. E & F. Section 1920(3) allows for the taxation of witness fees. "Per diem, subsistence, and mileage payments for witnesses are allowable to the extent reasonably necessary and provided for by 28 U.S.C. § 1821." Local Rule 54.2(f)(3); *see also Clausen v. M/V New Carissa,* 339 F.3d 1049, 1064 (9th Cir.2003) (stating that witness fees are taxable costs under § 1920(3), but are limited to forty dollars per day under 28 U.S.C. § 1821(b)); *Yasui,* 78 F.Supp.2d at 1130 (same).

Of the costs requested, $298.00 are for deposition attendance fees. Section 1821 sets forth these limitations for witness fees:

> (a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States, or before a United States Magistrate Judge, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section....
>
> ....
>
> (b) A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

28 U.S.C. § 1821. Because it appears that the requested costs were incurred as a result of depositions taken of the identified witnesses, the Court finds that these costs are manifestly reasonable.

 Plaintiff specifically requests $810.80 for airfare for certain witness to appear at their depositions. With respect to travel expenses, § 1821(c)(1) provides:

> A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. *A receipt or other evidence of actual cost shall be furnished.*

28 U.S.C. § 1821(c)(1) (emphasis added). Here, Plaintiff failed to attach receipts or other evidence of actual cost. Accordingly, the Court declines to tax costs for witness airfare.

As part of the witness costs, Plaintiff seeks to recover service fees totaling $914.84. Such fees are not per diem, subsistence, nor mileage fees. However, the Court finds that most of these costs are recoverable under § 1920(1). One of the cost items listed by Plaintiff stated "Service and Mileage S. Whang Civil Deputy (for Deposition)". Pl.'s Mot., Ex. E. Based on this description, the Court is unable to determine what cost can be attributed to service and what cost can be attributed to mileage. Consequently, the Court is unable to ascertain whether the mileage request conforms with the restriction in § 1821(c)(2). *See* 28 U.S.C. § 1821(c)(2) (permitting travel allowance for witnesses traveling by privately owned vehicle equal to mileage allowance for official travel of federal government employees). The Court therefore declines to tax $38.00 of the requested $914.84.

The remaining costs requested by Plaintiff pursuant to § 1920(3) are for delivery of documents via DHL and Fed Ex, totaling $68.27, and for the notary fee of $5.00 for an affidavit. These costs are not recoverable under § 1920. However, the Court shall consider these fees in its assessment of costs under § 1117(a).

In sum, the Court awards $1174.84 in costs pursuant to §§ 1920(3) and 1920(1).

### 4. Postage/Shipping Costs, Airfare, Bar Application Fees, Notary Costs

 Plaintiff requests postage/shipping costs, airfare and other travel expenses for Mr. Jakes, Hawaii State Bar Application Fee, and notary costs, totaling $9,787.94. While none of these costs are expressly provided for in § 1920, the more general clause in § 1117(a) entitles Plaintiff to an award of the remaining costs. Based on a review of the very limited nonbinding authority that has addressed the meaning of the phrase "the costs of the action," it appears that § 1920 costs and/or out-of-pocket expenses such as travel, postage, telephone, messenger service may be awarded if the Court finds that such costs are reasonable. *See, e.g., Tri–Star Pictures, Inc. v. Unger*, 42 F.Supp.2d 296, 306 (S.D.N.Y.1999); *Audi AG v. D'Amato*, No. 04–CV–70665, 2007 WL 313537, at *3 (E.D.Mich. Jan. 30, 2007); *SNA, Inc. v. Array*, 173 F.Supp.2d 347, 353 (E.D.Pa. 2001).

Plaintiff seeks $8,858.04 in travel costs, which are allowable under § 1117(a). However, based on the submissions of counsel, the Court is unable to determine the reasonableness of the requested costs. Rather than itemizing the costs, counsel has lumped general amounts for specific dates. The Court will thus reduce the travel costs by 15%, which results in a total of $7,529.33.

Plaintiff also requests reimbursement for a $650.00 Hawaii State Bar Association application fee. Because this fee does not fall under the category of costs permitted under § 1117(a), the Court declines to award said cost to Plaintiff.

Lastly, Plaintiff wishes to recover $274.90 for postage/mailing costs and $5.00 for notary costs. The Court finds that these costs are manifest reasonably and are the types of costs contemplated by § 1117(a). Therefore, the Court awards $279.90 in postage/mailing/notary costs.

Accordingly, Plaintiff is entitled to $7,809.23 in costs pursuant to § 1117(a).

### 5. Total Taxable Costs

Based on the above discussion, the Court recommends that the district court award $14,086.87 in costs. However, as noted above, counsel failed to include receipts for the cost requests. Thus, the Court conditions this award upon verification by way of supplemental declaration with the relevant receipts attached, by no later than seven (7) days from the filing date of this Report. If Plaintiff fails to submit said receipts, its request shall be deemed waived, and the recommendation for the award of costs shall be vacated.

### CONCLUSION

In accordance with the foregoing, this Court, acting as Special Master, FINDS and RECOMMENDS that Plaintiff's Renewed Motion for Attorney's Fees, filed November 9, 2007, be GRANTED IN PART and DENIED IN PART. The Court recommends that the district court award Plaintiff $147,504.08 in attorneys' fees and $14,086.87 in costs, for a total of $161,590.95. As discussed above, the award of costs is subject to verification by way of supplemental declaration with the relevant receipts attached, which should be submitted no later than seven (7) days from the filing date of this Report. If Plaintiff fails to submit said receipts, its request shall be deemed waived, and the portion of the recommendation for the award of Plaintiff's costs shall be vacated.

IT IS SO FOUND AND RECOMMENDED.

DATED: Honolulu, Hawaii, January 29, 2008.

*AMENDED REPORT OF SPECIAL MASTER RECOMMENDING THAT PLAINTIFF'S RENEWED MOTION FOR ATTORNEY'S FEES BE GRANTED IN PART AND DENIED IN PART*

On January 29, 2008, the Court issued a Report of Special Master Recommending that Plaintiff's Renewed Motion for Attorney's Fees be Granted in Part and Denied in Part ("Report"). Because Plaintiff failed to include receipts with its renewed motion for attorneys' fees, the Court conditioned the recommended award of costs ($14,086.87) upon the submission, no later than seven (7) days from the filing of the Report, of a supplemental declaration with the relevant receipts attached. The Court now issues this Amended Report for the sole purpose of revising the recommended cost award.

On February 5, 2008, one of Plaintiff's counsel, Phillip Li, sent a letter to the Court requesting that Plaintiff be given a one week extension of time to submit the requisite receipts. Mr. Li explained that Torkildson, Katz, Fonseca, Moore & Hetherington, his former place of employment, is in possession of several of the receipts, and that the records are currently in off site storage. Mr. Li represents that he contacted servers and vendors to whom the costs were paid, but they, like Torkildson, maintained the records off site. Included with the letter were copies of receipts in Mr. Li's possession, as well as receipts to support the costs awarded to Mr. Li's co-counsel.

Although the Court sympathizes with Mr. Li's predicament, the Court declines to grant an extension of time to submit the missing receipts. The Court has been patient and lenient with respect to Plaintiff's multiple requests for attorneys' fees. Plaintiff has had ample time and more than reasonable opportunity to gather and submit the receipts for the requested costs prior to and since filing its renewed motion for attorneys' fees in November of 2007. Indeed, Plaintiff's initial request for attorneys' fees and costs was filed on August 2, 2006. Plaintiff subsequently filed two motions for fees and costs. The Court denied without prejudice all three motions due to Plaintiff's failure to comply with the Local Rules and/or as premature. Accordingly, the Court finds that any further extension is inappropriate, and the Court consequently deducts the unsupported $443.90 in costs from the total cost award.

Plaintiff failed to produce documentation for several of its requests for witness fees, which total $164.00. Additionally, Plaintiff did not substantiate its request for DHL and Fed Ex costs, which totaled $274.90. Although Plaintiff submitted air bills and other documentation to prove that certain shipping occurred, said documentation did not evidence the cost of the shipping. Lastly, Plaintiff did not submit a receipt for the $5.00 requested notary fee. In total, Plaintiff failed to verify $443.90 of the $14,086.87 recommended cost award. The Court therefore deducts $443.90 from its recommended cost award, and amends its Report to recommend an award of $13,642.97 in costs.

Based on the foregoing, this Court, acting as Special Master, hereby amends its Report as to the award of costs, and FINDS and RECOMMENDS that the district court award Plaintiff $13,642.97 in costs. With the recommended award of $147,504.08 in attorneys' fees unchanged, the total award recommended for fees and costs is $161,147.05.

IT IS SO FOUND AND RECOMMENDED.

DATED: Honolulu, Hawaii, February 5, 2008.